[No. 3,203.]

# ROCCO PRATALONGO *v.* NICOLAS LARCO.

FINDING ON ISSUES MADE IN PLEADINGS.—Although when specific facts are put in issue by the pleadings, it is the duty of the Court or referee to find distinctly as to those facts, still, when only general facts are averred in the complaint and answer, and where the controversy relates to the settlement of a long standing account, consisting of numerous items, the referee or Court need not find the facts proved in respect to each item. If the items on the credit and debit sides are intelligibly stated, it is sufficient.

STRIKING OUT FINDING OF A REFEREE.—When a case has been tried by a referee, and he has reported a finding of facts, it is not good practice for the Court to strike out a finding made by the referee and substitute one of its own. If, however, this is done, and the appellant is not prejudiced by it, it does not furnish ground for a new trial.

CONTRACT IN WRITING TO PAY INTEREST.—When parties have mutual transactions, and one renders an account current to the other, in which the names of the parties appear, and he charges interest at a specified rate on both sides of the account, it is a contract in writing, sufficient under the statute, to charge him with interest at the rate at which he has charged himself in the account rendered. It is a contract in writing by which he stipulates to pay such rate of interest.

SETTLEMENT OF ACCOUNTS.— When a party who has had dealings with another for a long time, on a trial for the settlement of their accounts, claims commissions on certain drafts, and it appears that after the drafts were drawn, he rendered an account in which he made no charge for the commissions, and it also appears that he did not include the commissions in a bill of particulars rendered after the action was commenced, the referee or Court may exclude the commissions.

DAMAGES ON FOREIGN BILL OF EXCHANGE PROTESTED.—The payee in a foreign bill of exchange, drawn in this State, and which is protested by the drawee, is not the holder of the bill when it is protested, in the sense of the statute of the State, so as to be entitled to the twenty per cent. damages allowed to the holder.

IDEM.—The payment of a foreign bill of exchange by the drawee, *supra protest,* for the honor of the payee (an indorser), makes the drawee the holder of the bill, so as to entitle him to the statutory damages from the drawer, and the drawee may collect such damages from the indorser (payee); but if he does not claim them from the payee (indorser), the latter cannot collect them from the drawer.

COMMISSIONS FOR LOANING CREDIT OF MERCHANT.—Where a firm in San Francisco opens credit for a firm in Peru, South America, and the money advanced is to be raised by drafts on a firm in London, drawn by the San Francisco firm, which drafts are to be protected by another firm in Peru, and the San Francisco firm makes no charges for commissions in its books, nor in an account current rendered, and there is no agreement for commissions, nor any custom among merchants to that effect;

and the drafts are protested and returned to the drawers, and afterward paid by the Peru firm that was to protect them, with the usual commissions for drawing bills, the drawers are not entitled to commissions for the credit extended to the firm in Peru.

LETTER IN A FOREIGN LANGUAGE AS EVIDENCE.—If a letter in a foreign language is received in evidence without a translation, and no objection is made to it on this account, an objection cannot for the first time be raised in the Supreme Court.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The action was commenced December 30, 1867. The findings of the referee, not stated in the opinion, were, in substance, that from the first day of January, 1865, to the date of the commencement of the action, the plaintiff and defendant had transactions together in and about advancing money, the one to the other, for different purposes. That during the whole period, in rendering their accounts one to the other, the parties calculated interest at the rate of one and one half per cent. per month; and that, during the whole period, the parties had, from time to time, rendered accounts the one to the other. That on the twenty-first day of February, 1865, there was due to the defendant from the plaintiff, on an accounting between them, $16,298.61. That from said last-named day to the date of the commencement of the suit, the parties continued their transactions, advancing money one to the other for various purposes; and that the following was a true account of the transactions between the parties from the date of the accounting to the commencement of the action. Here followed an account of the different items, with a statement of what each item was, starting out with the balance, before mentioned, due the defendant. This account closed with a balance due Pratalongo by Larco of $14,439.03.

The defendant excepted to the findings because, in relation to several items of account in the referee's report, the referee had not found on questions of fact presented by the evidence.

The draft mentioned in the 5th subdivision of the opinion of the Court was drawn on Murietta & Co. of London,

England, for two thousand pounds sterling, and was made payable to the order of the defendant. The defendant indorsed it.

The other facts are stated in the opinion.

*Doyle & Barber,* for the Appellant argued, that the referee had so blended his findings of law and fact together, and simply stated the ultimate results, that it was difficult to specify any material finding of law or fact, and that the only conclusion of law in the report was the difference between the accounts in figures, and that this was a violation of our system of judicial procedure, which was so framed as to carefully preserve the distinction between decisions on questions of law and of fact, and that the finding of a referee should show what particular facts existed, and the law deducible from those facts, and cited, *Leffler* v. *Field,* 33 How. Pr. 389; *Lambert* v. *Smith,* 3 Cal. 408; *Breeze* v. *Doyle,* 19 Cal. 104; *Hidden* v. *Jordan,* 28 Cal. 304; *Jones* v. *Block,* 30 Cal. 228, and *Tewksbury* v. *Magraff,* 33 Cal. 247. They argued also that the referee should not have noticed the letter in the Spanish language and cited, Hittel's Dig. ₰ 1,318; *Spencer* v. *Doane,* 23 Cal. 420, and 1 Hoffman Ch. Pr. 236; and that it was error to allow 1½ per cent. interest, and cited, *Smith* v. *Johnson,* 23 Cal. 64, and *Crosby* v. *McDermitt,* 7 Cal. 148; and that it was error in the Court to amend the referee's report, and cited, *Pratt* v. *Stiles,* 17 How. Pr. 211, and *Buckinham* v. *Payne,* 36 Barb. S. C. R. 87; and that the item of twenty per cent. damages on the draft drawn on Murietta & Co., London, should have been allowed, and cited, *Bank of U. S.* v. *U. S.,* 2 How. U. S. R. 711.

*McAllisters & Bergin,* for the Respondent, argued, as to the item of 20 per cent. damages on the bill drawn on Murietta & Co., London, that the defendant was never the holder of the bill, as he did not purchase it, and the money was paid on it by Murietta & Co., and that defendant, as an indorser, could not recover damages, and cited, *Keystone* v. *Wilson,* 4 Wash. C. C. 310; *Warner* v. *Coombs,* 20 Maine, 142; *Dan-*

*gor Bank* v. *Hook*, 5 Greenl. 174; Story on bills, 5th Ed. 470, and Hitt. Dig. Art. 438. They also argued, that the letter in Spanish should have been excepted to, and cited, *Curiac* v. *Packard*, 29 Cal. 197, and *Peterson* v. *Hornblower*, 33 Cal. 278; and in relation to interest, they argued that an account stated was a new promise, and cited, *Carey* v. *P. & C. Petroleum* Co. 33 Cal. 697; and that a bill of particulars was conclusive as to the agreement to pay interest, as much so as would have been an admission in the answer of an agreement to pay 1½ per cent. per month, and cited, *Backus* v. *Minor*, 3 Cal. 233; *Wiggings* v. *Burkham*, 10 Wall U. S. 129, and *Seaman* v. *Law*, 4 Bosw. 351. They also argued, that the defendant was not injured by the change in the finding of the referee, and that the practice was proper, and cited *Chauteau* v. *Suydam*, 21 N. Y. 185; *Boyd* v. *Foote*, 5 Bosw. 121; *Mahoney* v. *Middleton*, 41 Cal. 41; *Calderwood* v. *Peyser*, 31 Cal. 337, and *Carpenter* v. *Schemerhorn*, 2 Barb. Ch. 321.


By the Court, CROCKETT, J:

The action is for money lent and advanced and paid, laid out and expended, by the plaintiff to and for the use of the defendant, and for money had and received by the defendant for the use of the plaintiff. The answer is a general denial, and a counter-claim, in which the defendant avers that the plaintiff is indebted to him for money had and received, lent and advanced, and paid, laid out and expended. The cause was referred to a referee to try the issues of law and fact, and to report a judgment. It appeared at the trial, that the action involved the settlement of a long account between the parties, growing out of mutual advances of money through a series of years; the plaintiff being a merchant residing in Peru, and the defendant a merchant residing in San Francisco. The referee filed his report, containing findings of fact and his conclusions of law, and stating the account between the parties, consisting of numerous items, from which it appeared that at the time of the commencement of the action, there was due to the plaintiff from the defendant the sum of $14,439.03, on

which interest was computed to the date of the judgment, the principal and interest amounting to $18,829; for which sum he reported a judgment for the plaintiff. The defendant excepted to the findings as defective in several particulars; but the Court overruled the exceptions. The defendant then moved for a new trial on several grounds; and amongst others, on the ground that the referee had compounded the interest on the account. At the hearing of the motion, the Court entered an order to the effect that the referee had committed an error in this particular; and thereupon ordered that the eleventh finding of the referee be stricken out, and that a new finding, correcting the error, be inserted; the amended finding being contained in the order itself. It was further ordered, that unless the plaintiff, within a specified time, should file his consent to the amendment, the motion for a new trial would be granted; but on filing such consent, the new trial would be denied. The consent was filed within the proper time; and thereupon the Court denied the motion for a new trial. The referee had computed interest at the rate of ten per cent. per annum, on the whole amount of principal and interest found to be due at the commencement of the action; but, by the finding as amended by the Court, interest was computed on the principal, down to the date of the judgment, at the rate of one and a half per cent. per month. The effect of this mode of computation was to increase the sum total of the judgment, by about the sum of $1,000, in excess of that reported by the referee. From this judgment, and from the order denying his motion for a new trial, the defendant appeals.

1. The exceptions to the findings were properly overruled. It is true, that where specific facts are put in issue by the pleadings, it is the duty of the Court or referee to find distinctly as to these facts. (*Breeze* v. *Doyle*, 19 Cal. 104; *Hidden* v. *Jordan*, 28 id. 301; *Jones* v. *Block*, 30 id. 228; *Polhemus* v. *Carpenter*, 42 id. 386.) But in a case of this character, where only general facts are averred in the complaint and answer, and where the controversy relates to the settlement of a long-standing account, running through

a period of several years, and consisting of numerous items on both sides of it, if the referee was required to find the facts proved in respect to each separate item, the record, in a majority of cases, would be incumbered with a mass of useless matter, greatly enhancing the expense of the litigation, and producing unnecessary delay and inconvenience. If particular items are improperly allowed or disallowed, the aggrieved party has his remedy by a motion for a new trial, which will be more convenient in practice than a detailed statement by the referee of the facts proved in respect to each item of a long account. In such a case, if the items on the debit and credit side are intelligibly stated by the referee, so that on the face of the report it clearly appears how the indebtedness arose, this, we think, is a sufficient compliance with the statute in this class of cases.

2. We cannot commend the practice adopted in this case, of striking out a finding of fact by the referee, and substituting for it a finding by the Court. But inasmuch as the finding which was stricken out related only to the method of computing the interest, under the facts reported by the referee, we do not see that the defendant was or could have been prejudiced by the action of the Court, if it be assumed that the method of computation which the Court adopted was correct. The other findings furnished the data for the computation made by the Court; and the only legal effect of the action of the Court was a decision that the referee had erred in a matter of law, in the computation of interest on a wrong basis. All the rest was merely a matter of arithmetical computation.

3. The defendant contends that the Court erred in computing the interest at one and one half per cent. per month, in the absence of a finding that there was a stipulation in writing by which that rate was agreed upon. The findings on this point are, in substance, that, prior to the twenty-first of February, 1865, the plaintiff and defendant had transactions together, in and about advances of money from one to the other; and at the time of such transactions, it was mutually agreed between them that "the rate of interest to be used in their accounts, the one with the other, was

one and one half per cent. per month;" and that, during the whole of that period, "in the making and rendering of their accounts, the one to the other, (they) calculated the interest in said accounts at the rate of one and one half per cent. per month." There is a similar finding in respect to the transactions between the parties, which occurred between February 21st, 1865, and the commencement of the action November, 1867.

In the bill of particulars rendered by the defendant in the present action, interest at this rate is charged on both sides of the account. But the referee does not find, either expressly or by implication, that there was any agreement in writing between the parties, fixing the rate of interest, unless the mutual accounts which were rendered, or the bill of particulars, shall be deemed an agreement in writing, within the statute; the first section of which provides that "when there is no express contract in writing fixing a different rate of interest, interest shall be allowed at the rate of ten per cent. per annum;" and by the second section of which, "parties may agree in writing for the payment of any rate of interest whatever on money due, or to become due, on any contract." When a party dealing with another, renders an account current of their mutual transactions, charging interest at a specified rate, on both sides of the account, this is a contract in writing, sufficient under the statute, to charge him with interest at the rate at which he has charged himself on the transactions embraced in the account. It is in substance and effect a contract by him in writing, whereby he stipulates to pay that rate of interest. The English statute of frauds requires certain contracts to be in writing, and to be signed by the party to be charged thereby. It has been frequently decided that it is a sufficient compliance with the statute, if the terms of the contract "can be fully collected from the various papers referring to each other" (Story on Contracts, Section 1,015, s.); or by an acknowledgment by letter, referring to another writing, in which the terms are stated (Section 1,015, t.); and it is not necessary that the contract be subscribed at the end by the promissor, provided his name appear in the

body of the writing, "and the circumstances of the case do not show that he did intend to be bound thereby" (Section 1,015, u.); and it is not requisite that the contract be signed by both parties, but only by him who is to be charged by it (Section 1,015, v.); and the signature will be sufficient if written in pencil or stamped by the promissor in print (Section 1,015, w.).   All that our statute regulating interest requires, is that the parties shall "agree in writing" to a stipulated rate; and the writing need be signed only by the party to be charged.   Otherwise, a promissory note signed only by the maker would not be a written agreement within the statute.   In analogy to the construction placed upon the English statute of frauds, we think an account current rendered by the one to the other party to the account, in which the names of the parties appear, is an agreement in writing on his part to pay the rate of interest with which he has charged himself, on the transactions embraced in the account.   The referee, therefore, did not err in the rate at which he computed the interest.

4. The referee refused to credit the defendant with the sum of $848 47, for commissions on certain drafts made by the defendant on the house in London for the use of the plaintiff, and this is assigned as error.   The drafts were made in January, 1865, and on the 21st of the following month the defendant rendered an account to the plaintiff, and another on the eighth of January, 1867, in neither of which is there a charge for these-commissions.   On the demand of the plaintiff, he filed a bill of particulars in this action, which contains no charge for these commissions, nor does it appear to have been charged in any of the defendant's books; the only reason assigned by the defendant for the omission being that he forgot it.   Under these circumstances, the referee may well have considered the item as not proved.   Moreover, it is not clear that it may not have been included in other items which were allowed.

5. In the bill of particulars, the defendant, under the date of February 25th, 1865, charges the plaintiff with the sum of $1,939 39, for damages and losses in exchange and interest upon a protested draft drawn by the plaintiff in

favor of the defendant upon a London firm, and which was finally paid by the Maritime Company of Peru. The referee reduced this item to $99 90, and refused to allow the remainder. It appears the draft was protested in London for non-acceptance; and thereupon the drawees, after protest, paid it, *supra protest,* for the honor of the defendant, and charged him therefor $99 90, which was allowed by the referee. Subsequently, the plaintiff, through the Maritime Company at Peru, took up the draft, but refused to pay the defendant the twenty per cent. damages allowed by our statute on the protest of a foreign bill of exchange made or negotiated in this State. It is claimed the referee erred in refusing to allow the damages. Our statute, then in force, provides that the rate of damages to be allowed upon the protest for non-acceptance on non-payment of a foreign bill of exchange, drawn or negotiated within this State, shall be twenty per cent. of the principal, which damages shall be in lieu of interest, charges of protest, and all other charges incurred previous to and at the time of giving notice of non-payment. Section 17 provides that "the damages allowed by this Act shall be recovered only by the holder of a bill, who shall have purchased the same, or some interest therein, for a valuable consideration."

On the payment, *supra protest,* by Murietta & Co. of London, of the bill in question, for the honor of the defendant, they became thereby the holder of the bill, with the same rights as against the drawer, as though they had been indorsees. A payment *supra protest* "transfers the holder's rights to the party paying, unless the party paying, by his own act, limits and narrows his rights." (Chitty on bills, 509; *Bank of the United States* v. *United States,* 2 How. pp. 736–766.) It is clear, therefore, that on paying the bill *supra protest,* Murietta & Co. became the holders of it; and they, if any one, were entitled to the statutory damages from the drawer. If they had claimed such damages the defendant, as an indorser to whom they were entitled to look for payment, would doubtless have been responsible to them, and on payment might have recovered over against the drawer. But Murietta & Co. did not claim the statutory

damages, and returned the bill to the defendant, with only the ordinary commercial charges for interest, commissions and cost of protest. The defendant was not the "holder" of the bill in the sense of the statute, when it was protested; and therefore is not entitled in that capacity to the damages; nor is he entitled to them as indorser, as he has not paid them to the holder, and is no longer liable for them.

6. We cannot say the referee erred in disallowing the item of $1,250 in the bill of particulars, for commissions on the credit opened for the Maritime Company of Peru. The credit was opened in August, 1865; and in January, 1867, the defendant rendered to the plaintiff an account current, purporting to contain the transactions between them up to that date; and there is no reference in the account to this item for commission. It appears nowhere in any book of accounts kept by the defendant, and is put forth for the first time in the bill of particulars, rendered after the commencement of the action. There is no proof of any agreement between the parties, that commissions were to be charged on the credit, and the evidence is not satisfactory that there is any custom or usage among merchants, to that effect. As we understand the accounts and the proofs, the money advanced by the defendant to the Maritime Company, was raised by the sale of his drafts on Murietta & Co. drawn by the authority of the plaintiff, who had promised to protect them. Failing in this, the drafts were protested and returned to the defendant, and were afterward paid by the plaintiff, through the Maritime Company, with the usual commissions for drawing bills. Upon these facts, the referee may well have been justified in disallowing the item for commissions on the credit.

7. There was no error in reducing the item $1,651 50 (being the last item on the debt side of the bill of particulars) to $612. The letter in the Spanish language of February 21st, 1865, from the defendant to the plaintiff, fully justified this reduction. The defendant, however, claims that the Court should have disregarded the letter, because there was no translation of it. The answer to this point is, that it was received in evidence without objection, and the

objection cannot be raised for the first time here. If a translation had been demanded at the trial it would doubtless have been furnished.

There is no error in the record. Judgment and order affirmed.