THE PEOPLE *v.* ROJAS.

APPEAL from the District Court of San Juan.

No. 223.—Decided April 7, 1910.

CRIMINAL LAW—RAPE—MANNER OF PROVING CHARGE—HOSTILE WITNESS FOR THE PROSECUTION.—The *fiscal* cannot prove the charges made in an information by the testimony of witnesses offered to impeach the testimony of a witness for the prosecution who has denied the essential facts in the case.

ID.—EVIDENCE TO IMPEACH VERACITY OF WITNESS.—The testimony of witnesses offered to impeach the veracity of a witness for the prosecution cannot produce the effect of direct evidence to show the commission of the crime.

ID.—RIGHTS OF ACCUSED—CROSS-EXAMINATION OF WITNESSES FOR THE PROSECUTION.—The testimony of witnesses, whom the accused is not given an opportunity to cross-examine, is not admissible in evidence for the prosecution.

ID.—EVIDENCE FOR PROSECUTION—TESTIMONY TENDING TO IMPEACH THE VERACITY OF WITNESS.—An attempt to prove the facts charged in an information by the testimony of witnesses offered to impeach the veracity of hostile wit-

nesses for the prosecution, constitutes a violation of section 11 of the Code of Criminal Procedure, which grants the accused the right to be confronted with the witnesses against him.

ID.—HOSTILE WITNESSES—IMPEACHING VERACITY THEREOF.—The purpose of section 243 of the Code of Criminal Procedure is to prevent the State from being surprised, and permit it to contradict or neutralize the testimony of a witness who is wholly or partially adverse.

ID.—RAPE—AGE OF AGGRIEVED PARTY—EXPERT TESTIMONY.—Although where the testimony of a physician, in regard to the age of the injured female, is based on a physical examination, it must be accepted with great caution; nevertheless, it is not error for the judge, who having had an opportunity to see her when she personally appeared before the court, to judge that she had not yet reached the age of consent.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy,* for appellant.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

In this case and before the District Court of San Juan an information was filed against Luis Rojas for the crime of rape, such information setting forth:

"The *fiscal* files an information against Luis Rojas for the crime of rape (felony), committed in the following manner: The said Luis Rojas in Carolina, within this judicial district, on a certain day in the month of October of 1908, or thereabouts, then and there the said Luis Rojas had carnal intercourse with Ramona Quiñones, a girl under the age of 14. This act is contrary to law and against the peace and dignity of the People of Porto Rico."

The case at the instance of the defendant was tried by the court without a jury. Before offering his proof the *fiscal* made the following statement: "Your honor, this case was presented to me and this girl, whose physical development the court has already had the opportunity of seeing, was persistent in saying at my office, that she was a virgin, and thereafter I asked her to permit herself to be examined and from the examination it appeared that she was not a virgin, and that led me to believe that she was under the influence of the self-same ravisher and that perhaps the same influence continues, and, as this is the best proof I have, if this girl refuses to tes-

tify to the facts, then I ask that I be permitted to testify thereafter.''

Ramona Quiñones was then put on the stand and swore that she was a virgin and had never been ravished; that if she signed a paper for the *fiscal* to a contrary effect it was without reading it and because she was coerced by threats; and that she did not say to the *fiscal* that she had slept with Luis Rojas several times, and what she wanted was that Luis Rojas should marry her; and examined by the defense she said that she had been compelled to give her testimony (*en contra*), at the instance of the lieutenant, the municipal judge, the secretary and the *fiscal*; in answer to the judge she reaffirmed her statements as to virginity and said that she was 16 and a half years old, was born in Loíza and baptized in Río Grande, and that she was sure of her age because her father had told her so and he knew the month and year in which she was born.

Then Vicente Torres testified that he was a police corporal and that he brought Ramona Quiñones to police headquarters; that at first she obstinately denied the facts but that afterwards at the questioning of the police * * *. At this point the defendant objected substantially on the ground that the proposed testimony was *res inter alios acta* and that the witness was presented, not to contradict the testimony of the girl, but as a witness against the defendant; but the judge permitted the witness to proceed by virtue of section 243 of the Code of Criminal Procedure, such section allowing a witness to be contradicted by other evidence and to show that he has made at other times statements inconsistent with his given testimony. An exception was taken to the ruling of the judge. The officer then went on to say that the girl first obstinately denied the facts, but later made statements showing that she was in a cemetery with Luis Rojas and that her drawers were stained with blood.

The *fiscal* then introduced other proof tending to show the guilt of the accused if the court should have deemed it suffi-

cient upon the weight of which we do not think it necessary to comment.

Then the *fiscal* took the stand and testified that at first the girl refused to testify to the facts, Rojas being present; that after Rojas was sent away (to free her from his influence), she told the *fiscal,* among other things, that she had had carnal relations with Luis Rojas, but she desired no action taken as she wanted to marry him.

While no specific objection was made or exception taken to the testimony of the *fiscal,* it was evidently suffered to be given in accordance with the theory of the trial judge that such evidence was admissible by virtue of section 243 of the Code of Criminal Procedure, and against this kind of proof the attorney had objected and excepted when the police corporal was testifying. It is evident that a great part of the testimony tending to prove the guilt of the defendant was brought to the attention of the judge, not by eyewitnesses nor by circumstantial evidence, but under the guise of an attempt to contradict a government witness. The theory was, as evidenced by the initial offer of the *fiscal,* that this was a mode of proof by virtue of section 243 of the Code of Criminal Procedure.

This is the same provision that is contained in the Law of Evidence, section 156, Laws of 1905, page 100. Each of them has been taken from similar provisions of the Code of Civil Procedure of the State of California, namely, sections 2049 and 2052. The highest court of that State has uniformly ruled that the evidence, to be contradicted, must be unexpected and in opposition to what the party presenting the witness had a right to expect. (*People* v. *Jacobs,* 47 Cal., 384; *People* v. *Mitchell,* 94 Cal., 550; 29 Pac., 1106; *People* v. *De-Witt,* 68 Cal., 584, 588; 10 Pac., 212; *People* v. *Creeks,* 141 Cal., 533; 75 Pac., 101.)

In *People* v. *Jacobs, supra* the court said: "To admit the proof of such statements would enable the party to get the naked declaration of the witness before the jury as indepen-

dent evidence," and in *People* v. *Mitchell, supra* "the impeaching statements were evidently desired as evidence. If such testimony were admissible it would be easy to manufacture evidence of that kind."

The purpose of aforesaid section 243 is to prevent the State from being surprised and to permit it to contradict or neutralize the testimony of a witness who is wholly or partly adverse. If a witness makes statements hostile to a defendant at a trial the latter has an opportunity to cross-examine him. But if his statements made at another occasion are introduced for the purpose of proving some essential element of a crime the defendant is deprived of such an opportunity. Such practice is in opposition to the fourth subdivision of section 11 of the Code of Criminal Procedure providing that in a criminal action the defendant is entitled "to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a prosecuting attorney or a justice of the peace; or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken in the presence of the defendant who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within Porto Rico."

We think the action of the court in permitting the police corporal and the *fiscal* to testify in this manner was prejudicial error.

It is objected in this court that the age of the girl was not properly proven in the court below.. It does not appear that any attempt was made there to draw the court's attention to this alleged error. The only objection made was to the introduction of the telegram from the keeper of the records at Loíza, that there was no record of the birth of the child, Ramona Juana, or Juana Gualberta Quiñones, daughter of Ed-

uardo and Juana Pinet. This objection was directed merely to the time at which the court permitted the evidence to be presented; in other words, that the case should not have been postponed to permit the Government to examine the records at Loíza. This was a matter within the sound discretion of the trial court especially as the action was permitted in view of the testimony of the girl, her father and others, to the effect that she was 16 and one half years old and was born at Loíza. We agree with the attorney of the appellant that the testimony of the physician with respect to the age of the girl was very unsatisfactory. The upshot of it was that from his examination of her he concluded that she was somewhere between 13 and 14 years old, but that she had not attained the age of 14. Now, if a girl's appearance and development are of such a character as to bring her so close to the age of consent, namely, 14, the testimony of an expert would have to be received with caution unless he gives more specific data on which to base his opinion than were uttered here. He confined himself to generalities as to her development and to the fact that she had not reached the age of puberty. It must, however, be remembered that the court also viewed the child, and, slim as the testimony is, we cannot say that the judge, who had his attention directed to her development, erred in considering her below the age of consent.

For the error to which we have alluded the judgment must be reversed and the case sent back for a new trial.

*Reversed.*

Chief Justice Hernández and Justices Figueras, Mac-Leary and del Toro concurred.