PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. SERGIO PLATA, Defendant and Appellant.

No. 3059.   Argued February 1, 1927.—Decided April 8, 1927.

The appellant appeared by brief in his own behalf. *José E. Figueras* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Jaime Alvarez del Manzano and Sergio Plata were charged with burglary in the first degree.

The defendant, Sergio Plata, asked for and obtained a separate trial; also, as the sequel will show, he asked before the trial that an attorney be assigned to him. It would also appear that at the opening of the trial he made a similar request of the judge who was trying the case and that the court denied the same. Therefore, the case proceeded to trial and the defendant had no other representative than himself. After the trial the jury brought in a verdict of guilty as charged. The defendant was sentenced to ten years in the penitentiary, and appealed.

Jaime Alvarez del Manzano, jointly charged with the appellant, was a witness of the government. This witness was asked early in his examination whether he had not admitted to a detective that the witness and the defendant had committed the robbery. The defendant at that time made no protest at this testimony. It turns out that these alleged statements of the supposed accomplice were not made

in the presence of the defendant and no previous combination was shown or offered to be shown.

The *fiscal* of the district court proceeded to ask the supposed accomplice about other facts and matters in which the defendant apparently had no intervention. The *fiscal* said: "I desire to say to the court that I have asked these questions because I have been surprised by the declaration of this witness." There was more of this, but the defendant made no objection.

Then Ramón Martínez Chapel was called as a witness. He was asked about certain statements supposed to have been made by Alvarez, the preceding witness and supposed accomplice. While this witness was stating that the said supposed accomplice had made his declaration voluntarily, the defendant directed himself to the court and said: "Your Honor, may a witness declare on information?" The court asked: "Was the defendant present?" and the answer was that he was not. The *fiscal* then said: "It is completely admissible when a witness surprises the *fiscal* in his declaration, and I have already made the indication (*advertencias*) to Alvarez." The court admitted the testimony. Then other witnesses were admitted on the same theory, namely, to tell what Alvarez, the said alleged accomplice, had said to them.

Finally, on page 27 of the stenographic notes, the defendant made a more spirited opposition. He called attention to the fact that a great deal of hearsay evidence was being admitted and that it was probably for that reason that he was not allowed an attorney. The court had the idea, and said so, that the defendant ought to have asked for an attorney before the trial; that with respect to the declarations of the witnesses the *fiscal* had already explained that they were trying to attack the truth of the statements made by Alvarez, inasmuch as the *fiscal* had been surprised by his declaration, and the court stated that this was done by virtue of the jurisprudence of the Supreme Court of Porto Rico in the case

of *People* v. *Ríos,* 34 P.R.R. 519; that when the *fiscal* was surprised by the declaration of a government witness he might impugn the veracity of this witness with other evidence, and it is for that reason that these statements were admitted, in order that the gentlemen of the jury might determine what veracity the statements of the witness Alvarez merited, and of the other witnesses presented at the trial.

Before the conclusion of the trial the defendant again drew the attention of the court to the fact that he was without an attorney and that before the trial he had made two petitions to the court to be allowed to have one. The judge said that none of these petitions had been drawn to his attention and the court at this point of the trial had the idea that it had no power to name an attorney in a case of burglary.

The verdict of the jury was rendered on the 4th of October, 1926. On the 7th of October, 1926, the defendant was summoned before the court for the pronouncement of sentence, whereupon the court asked the defendant if he had any reason to express why judgment should not be pronounced against him. The defendant presented a writing to the court, and said in effect as follows:

"That he had refrained from challenging part or all of the jurymen because the court had denied his petition for the naming of an attorney, the defendant being insolvent; that he opposed the rendering of judgment because he was not in accord with the verdict rendered by the jury inasmuch as he believed that such verdict did not arise from their own consciences and that he based this conclusion on the fact that when the court declared a recess in order that all might go to lunch, a time when all the evidence had already been submitted, the court gave complete liberty to the jurymen, causing as a result that the gentlemen of the jury went from the edifice of the court to their respective homes in union with policemen, detectives and witnesses of the prosecution and agents of the commercial house of Moscoso Brothers (the owners of the burglarized house); that the court renewed its sessions at 2.30 p. m. and that some of the jurymen were still lacking while the others were in contact with the public, detectives and witnesses against him, later to be gathered

together to continue the trial and later to render the verdict that they gave in the present case."

The court in answer said that it was a discretional matter with the court either to put the jurymen under the control of the marshals and bailiffs or to put them on their honor, and that the fact that one of the jurymen arrived late made no difference. Then the defendant asked that the motion of his presented to Judge Angel Acosta Quintero, which that judge granted, should be included in the record. The judge replied:

"In regard to the other subject-matter of this petition in accordance with the Code of Criminal Procedure (the naming of an attorney) exists only in cases of murder in the first degree. In all other cases it is discretional with the court to name or not to name a lawyer; that the court can not compel the lawyers of the district to render their services to the defendants in the rest of the cases No reason existing for not rendering judgment today, the court will render judgment against Sergio Plata for the crime of burglary in the first degree, and in order to do so the court will act in acocrdance with the jurisprudence in the case of People v. Delgado, 35 P.R.R. 161, wherein the Supreme Court decided that the judge may receive evidence to aggravate or mitigate the judgment that he is about to pronounce. Therefore, the court has received and admitted the proof presented by the *fiscal* consisting of a certificate of the warden of the jail of the District of San Juan, where the record of the defendant is stated."

Then there follows a long list of convictions for petit larceny or burglary in the second degree. One sentence had still a year to run and the court commented on the fact that the sentences pronounced and still to be undergone by the defendant amounted to twelve years and seven months.

The transcript of the record was sent up to this court and the defendant presented a so-called brief to this court.

While this brief is informal, it sufficiently draws attention to two or three important matters. The first was the failure of the court to name a lawyer; the second was the objection to all hearsay evidence that was admitted during the trial,

and the third was to the liberty allowed to the jurymen after the evidence was all in.

We have examined the instructions. On the whole they are very good and if the defendant had had an attorney we should not have noticed certain lacks which they contain. The court very properly instructed the jury that it should not believe the statements of an accomplice unless they found that his declarations had been corroborated. The court, however, did not point out to the jury the nature of the corroboration required. What we mean to say by this is that the court should have told the jury that some of the evidence introduced could clearly not be used for the purposes of corroboration. Supposing, for example, that all the statements of the witnesses,—and there were many of them,—admitted for the purpose of contradicting the alleged accomplice were properly admissible, nevertheless, as they were expressly and ostensibly admitted only for the purpose of contradicting the said accomplice, the court should have carefully instructed the jury that no part of such statements should be considered by them as corroborating the statements of the said accomplice.

The instructions are lacking in that, inasmuch as, independently of the question of corroboration, the court should have instructed the jury that evidence admitted to contradict the accomplice should not be considered by the jury as primary evidence for the purpose of proving the participation of the defendant in the crime charged.

We shall then consider the necessity of the appointment of an attorney. Section 141 of the Code of Criminal Procedure, as passed in 1902, said:

"If the defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel, the court must assign counsel to defend him."

This section was amended in 1905, as follows:

When the defendant is brought into a court for the purpose of being arraigned upon a charge involving the death penalty or imprisonment for life, if it appears that he has no counsel and is too poor to employ counsel, the court shall appoint one or more practicing attorneys to defend him free of charge, and the counsel so appointed shall have a reasonable time to prepare for trial. In all other cases such appointment shall be discretionary with the court.'' (Compilation of 1911, p. 972).

Section 2 of the Organic Act of Porto Rico provides that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense, etc. The provision of the Organic Act possibly was directed to nothing more than to secure the defendant the right to have the assistance of counsel for his defense. In terms the said provision does not make it imperative for a court to appoint counsel in every case when the defendant appears in court without counsel. A doubt assails us, however, as to whether, if a defendant on a trial for a felony says he is insolvent, a duty does not arise on the part of the court to appoint counsel. The doubt is whether the provision of the Organic Act does not become a dead letter if a defendant has no means to retain a lawyer.

These considerations are somewhat emphasized on account of the position taken by the judge that he could not compel counsel to take the case of the defendant. The law, we hold, is otherwise, at least in a case of felony. An attorney is primarily an officer of the court and in a proper case may be compelled to take the defense of a man charged with crime.

Something of this sort was said by Judge Field in the case of *Rowe* v. *Yuba County*, 17 Cal. 61, where the court added that for compensation attorneys must trust to the possible future ability of the party. After a similar indication in *Cutts* v. *State*, 54 Fla. 21, 45 So. 491, the court commented that no one was at liberty to decline such an appointment and few, it was to be hoped, would be disposed to do so. Judge

Holt of the District Court of the United States for Porto Rico in P. R. Fed. 1, 439, said:

"Attorneys so assigned can not refuse to act. They are officers of the court. They exercise a franchise, or privilege by the court's permission, and it is their duty to subserve the needs of public justice."

Other authorities to the same effect are *Pardee* v. *Salt Lake County*, 39 Utah, 482, 118 Pac. 122, 36 L.R.A. (N. S.) 377, and note, Ann. Cas. 1913 E 200, and note; *Dane County* v. *Smith*, 13 Wis. 585, 80 A. D. 754; *Weatherby* v. *Pittman*, 101 S. E. 131; 66 C. J. 627. In one of these cases the reporting judge said that in his experience (and it was wide) he had never known counsel to decline such an appointment.

In practice, if the court is desirous of appointing counsel, almost invariably there is no difficulty. In almost every place where there is a district court there are lawyers who at the suggestion of the court would be glad to undertake the representation of a man accused of crime, especially if the lawyer proposed is not otherwise engaged in trial or preparation therefor. Many a lawyer, of course, does not care to engage in criminal practice, but the situation is immediately changed when he is requested so to do by the court. It is a matter of honor for the bar. Young lawyers especially are frequently glad of the opportunity to defend a case.

We do not know definitely what was the purpose of the Legislature in changing section 141 of the Code of Criminal Procedure and leaving it to the discretion of the court whether or not to appoint an attorney in cases other than those involving the death penalty or imprisonment for life. We imagine that in part it was to avoid the necessity of appointing counsel in violations of municipal ordinances and other misdemeanors. Likewise, perhaps the purpose of the legislation was to give the court a discretion in determining whether or not the defendant was actually poor or could employ counsel. It is, moreover, less embarrassing to the court to have a

defendant in an important case actually represented by counsel; otherwise, frequently the judge will be impelled to take the part of the defendant and attempt by anticipation to judge whether a question directed to a witness is proper or not. With regard to some testimony a question directed by the *fiscal* might be clearly incompetent and yet counsel for the defendant, knowing that the answer would be harmless, may not object, and in many other ways the presence of counsel will obviate delays; also when it comes to the instructions to be given to the jury the court presumably will always be aided by counsel and will not have to wonder whether the said instructions cover the whole ground or have included anything to the detriment of the defendant.

It appears, as we have indicated, that the defendant at the opening of the trial asked the judge who presided to appoint counsel. The court thought that the moment of the trial was too late. We do not agree with the court. Where the defendant requests it and especially where all the indications are that the defendant is insolvent, then we think it is an abuse of discretion not to appoint a lawyer in an important case of felony, supposing, as we are now doing, that the appointment of counsel is entirely within the discretion of the court.

Later in the case, however, it turned out that the defendant had made at least one, and possibly two, requests to have counsel appointed. It appeared from the record apparently that the other judge at Ponce had acceded to the request of the defendant that counsel be appointed. Even under the theory that the defendant should ask for a lawyer before the moment of the trial, nevertheless, as the phrase is used, it was a clear abuse of discretion not to appoint counsel when the defendant showed to the court that he had made previous requests for such appointment, and his request had been granted by the other judge. Under the recited circumstances it became the imperative duty of the court to have declared

a mistrial and set the case *de novo.* The defendant, it was true, showed that he had some knowledge of court ways, yet evidently he did not know enough to insist that he had already made request for counsel. The failure to appoint counsel is by itself enough to cause the reversal of this case.

The admission by the court of the mass of hearsay evidence, to which we have referred, was erroneous and unmistakenly prejudicial, at least in the manner admitted. In *People* v. *Rojas,* 16 P.R.R. 241, we said:

"While no specific objection was made or exception taken to the testimony of the *fiscal,* it was evidently suffered to be given in accordance with the theory of the trial judge that such evidence was admissible by virtue of section 243 of the Code of Criminal Procedure, and against this kind of proof the attorney had objected and excepted when the police corporal was testifying. It is evident that a great part of the testimony tending to prove the guilt of the defendant was brought to the attention of the judge, not by eyewitnesses nor by circumstantial evidence, but under the guise of an attempt to contradict a government witness. The theory was, as evidenced by the initial offer of the *fiscal,* that this was a mode of proof by virtue of section 243 of the Code of Criminal Procedure.

"This is the same provision that is contained in the Law of Evidence, section 156, Laws of 1905, page 100. Each of them has been taken from similar provisions of the Code of Civil Procedure of the State of California, namely, sections 2049 and 2052. The highest court of that State has uniformly ruled that the evidence, to be contradicted, must be unexpected and in opposition to what the party presenting the witness had a right to expect. (*People* v. *Jacobs,* 47 Cal., 384; *People* v. *Mitchell,* 94 Cal., 550; 29 Pac. 1106; *People* v. *De-Witt,* 68 Cal., 584; 10 Pac., 212; *People* v. *Creeks,* 141 Cal., 533; 75 Pac., 101.)"

Among other things, in the case of *People* v. *Mitchell, supra,* it was made clear that the evidence to be contradicted must in itself be harmful to the government. In other words, that the witness must have given positive testimony hurtful to the prosecution or favoring the theory of the defendant before such contradictory evidence may be offered.

Section 243 is as follows:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character; but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony."

When this section says that the witness may be contradicted by other evidence it does not mean that the supposed contradiction is a disguise to introduce positive testimony that could not otherwise be admitted. Such evidence must be introduced to contradict the witness and not as a substitute for evidence that the government could not otherwise present to the jury.

Furthermore, when a government witness turns out to be hostile he puts himself in the same position as any other adverse witness and section 245 of the Code of Criminal Procedure must be followed. It is as follows:

"A witness may also be impeached by evidence that he has made at other times statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of time, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

In some respects, evidence supposed to contradict Alvarez was offered without first giving the witness an opportunity to explain. Without such preliminary opportunity some of the offered evidence, if objected to, was inadmissible for this reason, if not otherwise. Nor can it be supposed that the admission of this evidence was harmless. See *People* v. *Ramírez de Arellano,* 25 P.R.R. 256.

The facts of the *Ramírez Case* were somewhat different from the *Rojas Case* cited above, but the principle of that case was affirmed.

The case of *People* v. *Ríos*, 34 P.R.R. 519, does not support the position of the *fiscal* and the court. In that case, as in the case of *People* v. *Francisco Rodríguez, ante,* page 388, the witnesses had given positive testimony hurtful to the case of the prosecution. All the cases reviewed in the *Ríos Case* demonstrate that the government was trying to show that a witness who may give hurtful testimony was not to be believed.

We shall spend no great amount of time in discussing whether the jury should have been allowed to disperse after the evidence was all in, and especially if the case had been submitted to them under instructions of the court. We are not prepared to say that the court had no discretion in the matter, but we are inclined to believe that under the circumstances of this case and the atmosphere produced it would have been better practice, to say nothing of a true exercise of discretion, to have put this jury in charge of a marshal or bailiff. The defendant, it turns out, was a confirmed criminal. In such cases police officers and detectives are frequently more zealous than ever to secure a conviction and sometimes in their zeal they may whisper to a juryman that the defendant has frequently been convicted of other crimes, or is a jail bird. No matter how hardened a criminal may be, he should be tried for the particular crime of which he is accused and not for the commission of other crimes. We say this, too, because, although probably it was not a serious error, yet the court itself at one time said to the defendant that he, the defendant, was sufficiently familiar with criminal prosecutions, a statement that, although this was not the intention of the court, might have given the jury some idea of the criminal record of the defendant.

On page 4 of the instructions the court, after indicating that it was unnecessary to enter into an analysis of the evidence as the declarations were fresh in the minds of the

jurymen, said: "However, if any gentleman of the jury does not recall any of the declarations or has any doubt of any part of the proof, he only has to say so to the court and the latter will order the stenographer to read any declaration that the gentlemen of the jury desire to hear anew."

When a case is submitted to a jury they are supposed to arrive at a verdict as rapidly as possible. If they may come into court because of the doubt of one or more of them, the moment of the verdict will frequently be delayed, but more important than this is the fact that the defendant, or his counsel, has a right to be present at every step of the trial against him. Some courts think that it is error to read the stenographic notes to the jury. See monographic note to *State of Iowa* v. *Perkins,* 21 L.R.A. (N. S.) 931. As that note shows, however, the question of whether any part of the evidence taken down by the stenographer should be read to the jury is generally a matter within the sound discretion of the court. Being a matter within the sound discretion of the court, ordinarily no suggestion should be made to the jury, but they should be allowed to exercise their own volition. Experience tends to show that ordinarily the jury does not need such refreshing. *People* v. *Warren,* 130 Cal. 678; *Moore* v. *State,* 52 Tex. Crim. 364, 107 S. W. 355, where the juries having originally asked for a reading, and the reading being delayed, rendered their verdict without waiting for the actual reading.

We find no error in the action of the court after judgment in considering the previous record of the prisoner in mitigation or aggravation of the sentence to be pronounced.

For the error of failing to appoint an attorney and for the errors of admitting testimony entirely hearsay and prejudicial the judgment must be reversed and a new trial ordered.