[No. 10,130.]

# THE PEOPLE v. JOSEPH JACOBS.

PROOF OF DECLARATIONS OF WITNESS MADE OUT OF COURT.—When a witness who is called by a party, does not testify to what the party expected, but does not give testimony against him, the party calling the witness is not permitted to prove that the witness had made statements to others, which, if testified to on the trial, would have tended to make out his case.

APPEAL from the County Court, County of Solano.

The facts are stated in the opinion.

*Joseph McKenna,* for the Appellant.

*John L. Love,* Attorney-General, for the People.

By the Court, WALLACE, C. J.:

The prisoner, indicted for the crime of burglary with intent to commit rape, etc., was found guilty, and judgment having been rendered upon the verdict, this appeal is taken from the judgment and an order denying the motion of the prisoner for a new trial.

Several points are made by the prisoner's counsel in argument, but it will be necessary to notice only one of them.

The prosecution gave evidence tending to prove that the prisoner had, in the night-time, broken into a dwelling-house, where a girl named Mary Proctor resided, with the intent to commit a rape upon Mary. The District Attorney endeavored to show that the prisoner had previously made threats that he would commit this offense, and for that purpose he called as a witness one Kesterson, and questioned him upon that point. The witness answered, detailing conversations he had had with the prisoner, with respect to the girl, but these, in their tone and character, though tending in a measure to inculpate the prisoner, did not amount to threats or expressed intention upon his part to do her a wrong by violence. The District Attorney then, upon suggestion that Kesterson was an unwilling witness,

was permitted by the Court, against the objections of the prisoner, to put leading questions to him as to the supposed threats made by the prisoner in his presence, but the witness denied that he had heard the prisoner make them. He was then asked if he, the witness, had not, at a time and place suggested in the question, stated to one Dunton, a deputy sheriff, that the prisoner had made to him, the witness, the threat referred to. The witness answered that he had had a conversation with Dunton at the time and place referred to, but that he did not state to Dunton that the prisoner had made the threats inquired of.

The prosecution then called Dunton as a witness to contradict Kesterson, and, against the objection of the prisoner, Dunton testified that Kesterson had stated to him that the prisoner had, in the presence of him, Kesterson, made the threats which had been inquired of by the prosecution. There is, undoubtedly, some confusion in the adjudged cases upon this and kindred questions concerning the limit to which a party may go in contradicting the evidence of his own witness, who unexpectedly testifies against him. The rule most consonant to reason, I think, is that given in Greenleaf, Vol. 1, Sec. 444 a; Redfield's edition: * * * "You may cross-examine your own witness if he testify contrary to what you had a right to expect, as to what he had stated in regard to the matter on former occasions, either in Court or otherwise, and thus refresh the memory of the witness, and give him full opportunity to set the matter right if he will; and, at all events, to set yourself right before the jury. But you cannot do this for the mere purpose of discrediting the witness; nor can you be allowed to prove the contradictory statements of the witness upon other occasions, but must be restricted to proving the facts otherwise by other evidence."

It will be observed, too—as adverted to already—that in this case, though the witness had failed to testify to all the prosecution expected or desired, he had not, as a witness for the prosecution, testified against the prosecution or to any matter advantageous to the prisoner. In this circumstance, the case is not unlike that of *Commonwealth* v.

*Welsh* (4 Gray's R. 535), in which the witness called by the government, in a prosecution for being a common seller of spirituous and intoxicating liquors, denied that he knew the prisoner's business or where his shop was situated. The witness appearing to be inclined to evade the question put to him, the District Attorney was then permitted to ask him the following question: "Did you not swear before the Grand Jury that you did know the defendant's business, and that you did know where the defendant's shop was situated?" Upon this, Mr. Chief Justice SHAW, with the concurrence of the whole Court, observed: "The evidence of what the witness testified before the Grand Jury ought not to have been received. It bore upon no question pertinent to the issue. It was not to neutralize the effect of evidence given by the witness against the party calling him, for the witness had given none. It could only be to disparage the witness, and show him unworthy of credit with the jury, which was inadmissible."

For the reasons indicated, I think that the Court below erred in admitting the testimony of Dunton, and that a new trial should be allowed.

Judgment reversed and cause remanded for a new trial.

Mr. Justice McKINSTRY delivered the following opinion, concurring specially, in which Mr. Justice CROCKETT concurred:

I concur in the views expressed in the last portion of the opinion of the Chief Justice, and in the judgment. I am not prepared to say it is never competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his cause, had previously stated the facts in a different manner. But when a witness has not given adverse testimony, the party calling him ought not to be permitted to prove that he had made statements which, if sworn to at the trial, would tend to make out his case. To admit the proof of such statements would enable the party to get the naked declarations of the witness before the jury as independent evidence.

Neither Mr. Justice RHODES nor Mr. Justice NILES expressed an opinion.