[No. 20900.   Department Two. — May 23, 1892.]

## THE PEOPLE, RESPONDENT, v. RUBE MITCHELL, APPELLANT.

CRIMINAL LAW — HOMICIDE — EVIDENCE — ALIBI — TIME OF DEPARTURE OF TRAIN — CUSTOM AS TO SCHEDULE TIME — REGISTER — HEARSAY. — In a criminal prosecution for murder, where the defendant claimed an *alibi*, and the prosecution claimed that the crime was committed before the departure of a certain train, which contradicted the claim of *alibi*, it is error for the court to permit the prosecution, against objection, to show by the local agent and the night operator of the railroad, that by the rules and regulations' of the company the trains must not arrive before their schedule time, and that the conductor must register the exact time of arrival and departure, and that such register was in fact kept at the station, and to permit the introduction in evidence of the register, where neither of the witnesses had any actual knowledge of the times, nor was the conductor who made the record called as a witness. Such evidence should be excluded as hearsay.

ID. — DECLARATION OF GUILT BY PERSON ACQUITTED — REBUTTAL OF HEARSAY AS TO LOAN OF PISTOL. — Upon the trial of a defendant charged with murder, where a witness for the defendant testified, without objection, that a person who had been tried for the same offense, and had been acquitted, told him that he killed the deceased, and that he got a gun from another person, testimony of such other person, in rebuttal, that he did not loan a pistol to the person acquitted is incompetent, and does not tend to disprove the evidence as to the fact of his declaration.

ID. — EXPERT EVIDENCE — PROVINCE OF JURY. — It is error for the court to allow a gunsmith to testify, as an expert, that in his opinion a certain cartridge had never been in a pistol, because he saw no mark on it, and that a ball assumed to have been from a pistol was not similar to another ball taken from the head of the deceased, or to describe the balls which were in court and shown to the jury. Such matters are not properly the subject of expert testimony, but are for the jury to pass upon.

ID. — ADMISSIONS OF DEFENDANT AS WITNESS FOR ANOTHER DEFENDANT. — In a criminal prosecution, voluntary statements or admissions of the defendant, made while testifying as a witness upon the trial of another person charged with the same offense as defendant upon a different information, are competent evidence against him.

ID. — WHAT SWORN STATEMENTS ARE VOLUNTARY. — The testimony of a witness in a criminal proceeding is considered voluntary, unless the questions are objected to, and the witness forced nevertheless to testify. The mere fact that he was duly sworn to answer questions, and was compelled to answer or admit that his answers might criminate himself, does not render his testimony involuntary.

ID. — FAILURE OF WITNESS TO TESTIFY AS EXPECTED — IMPEACHMENT. — A witness, whichever party calls him, cannot be impeached unless he has given testimony against the impeaching party. The mere failure of a witness to testify to a fact as expected does not authorize the party calling him to prove that he had elsewhere made the desired statements. It is only when he has given damaging testimony that he can be impeached.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial.

The facts are stated in the opinion.

*W. P. Johnson,* and *G. H. Chase,* for Appellant.

The admission of evidence as to the railroad record and the rules and regulations of the railroad company was prejudicial error, as it was hearsay. (1 Greenl. Ev., sec. 99; see *Estate of Crozier,* 74 Cal. 180.) The court erred in allowing the question to be asked of the witness Morin as to whether or not he gave Long a pistol the night of the shooting, as the evidence was not relevant to the question whether Long had a pistol that night, and was inadmissible for the purpose of impeachment. (Wharton on Evidence, sec. 558, and cases cited; *Kinney v. Folkerts,* 78 Mich. 687; see *People v. Hurtado,* 63 Cal. 289.) The objections to the evidence of the gun expert should have been sustained, as his testimony, afte the

comparison of the balls before the eyes of the jury, was incompetent. (Code Civ. Proc., sec. 1870, sub. 9, sec. 1845; *People* v. *Manke,* 17 Hun, 410; 78 N. Y. 611; *Suppenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48; *Ferguson* v. *Hubbell,* 97 N. Y. 507; 49 Am. Rep. 544; *People* v. *Westlake,* 62 Cal. 303; *People* v. *Ah Own,* 85 Cal. 580; *Sprague* v. *Atlee,* 81 Iowa, 1.) The court erred in admitting in evidence the testimony of defendant when a witness on the trial of Long, charged with the same offense. (*Ex parte Stice,* 70 Cal. 51; *People* v. *Sharp,* 107 N. Y. 424; *People* v. *McMahon,* 15 N. Y. 384; *People* v. *Thomas,* 9 Mich. 317.) The court erred in allowing the prosecution to ask impeaching questions of their own witness, Hopper, and thus get hearsay evidence before the jury to impeach defendant's witness, Boyden. (*People* v. *Jacobs,* 49 Cal. 384; *People* v. *Wallace,* 89 Cal. 158.)

*Attorney-General Hart, Deputy Attorney-General Layson,* and *District Attorney McCoy,* for Respondent.

Temple, C. — The defendant, having been convicted of murder in the second degree, appeals from the judgment and a refusal of a new trial.

It appears that Oscar Crandall was fatally shot, about midnight, April 23, 1891, near Rathja's saloon, in the town of Red Bluff. Crandall, who had been in the saloon, went out upon the back porch, where he was engaged for a time imitating Chinese talk. Two or three minutes after he went out, Rathja heard the report of a pistol, and went upon the back porch, but saw no one. The back yard was surrounded by a high fence. The saloon was at the corner of Main and Hickory streets, facing on Main. It was bright moonlight, and except as obstructed by the fence, Rathja could see both streets.

Two witnesses claim to have been eye-witnesses of the affray; Peterson, who testified for the prosecution, was 224 feet away, westerly on Hickory Street. He was positive that he recognized defendant's voice, but he could distinguish no one by sight. He saw the flash of the

pistol, and the person who fired ran off south, along the alley back of the yard which incloses Rathja's back porch.

This is all the direct testimony against defendant, but there was considerable circumstantial evidence.

Defendant claimed and testified, as did several other witnesses in his behalf, that he was at home, about a half-block from Rathja's saloon, administering what he calls a "shot" of morphine to one Boyden, when he heard the report, and was told that some one was shot, and then ran across the street with Boyden, found the wounded man, and he and Boyden took up the body and carried it to the front of the saloon. While they were so carrying the wounded man the people gathered.

Hughes and Boyden both corroborate defendant's story. Hughes says he was across the street from Rathja's back yard, at the corner of Hickory and High streets. He heard the altercation, saw the flash of the pistol, and the assassin run off, he thought, down Main Street, and being but a few steps from defendant's house, informed a woman there that some one was shot; that Mitchell and Boyden ran past him to the saloon, and the body was carried as defendant stated.

To make out the case for the prosecution by the circumstantial evidence, it became important to fix the precise time of the homicide. It was contended on the part of the people that defendant did not go to his house, as he claimed he did, to administer the hypodermic injection of morphine to Boyden; that he came up from the depot on the Tremont hotel bus, after the arrival of the train, which was due at 11:50, P. M.; that the homicide was committed before the departure of the train, the schedule time of which was 12:05.

They had experiments made as to the time it would require to walk where he said he walked after he left the bus, and claimed that he did not have time to go home and do what he said he did before the report of the pistol.

There was much evidence directed to this point on

both sides. Among other things, the defense introduced evidence showing that the train did not leave on that night until after 12:10.

The prosecution, against the objections of the defendant, were permitted to show, by the local agent of the railroad and the night-operator, that by the rules and regulations of the company, the trains must not arrive before their schedule time, and that the conductor must register the exact time of arrival and departure; that such register was in fact kept at this station. The register was then introduced, defendant objecting, from which it appears that the train arrived and left on the night in question on schedule time. Neither of the witnesses had any actual knowledge of the times, nor was the conductor who made the record called as a witness. The evidence was clearly incompetent, and was immaterial in the highest degree. If we can presume, as suggested, that the conductor was absent or dead, that fact would make no difference. It was hearsay evidence, and should have been excluded.

It seems that one H. K. Long had been tried for this same offense, and had been acquitted. Nevertheless, the defense attempted to prove that Long committed the homicide.

C. A. Boyden, a witness for the defense, testified, without objection, that Long told him that he had killed Crandall, and that he got the gun from Morin. In rebuttal, the prosecution asked Morin if he loaned Long a pistol, and he was allowed, against the objection of the defendant, to answer that he did not.

This was not competent. It did not tend to show that Long did not kill Crandall, or that Mitchell did, and it did not tend to contradict the witness Boyden, who did not say that Long procured a pistol from Morin. He only testified as to what Long had said, and this evidence did not tend to disprove that fact. (See *People* v. *Hurtado*, 63 Cal. 289.)

Vance, a carpenter and gunsmith, was called as an expert, and allowed, against objection, to state his opin-

ion that a certain cartridge had never been in a pistol, because he saw no mark on it. He was then allowed to compare a ball shown him, and assumed to have been from a pistol claimed by the defense to have been used by Long, with the ball taken from the head of deceased, and to state that they were not similar. The balls were there in court, and shown to the jury.

This was not a proper subject for expert testimony. It did not require special skill to determine whether a cartridge had marks upon it which would indicate that it had been once in the chamber of a pistol, nor that it was covered with verdigris, nor that the end of one bullet was feather-edged, and another not so, or was flat or concave at the end. These are all matters of common knowledge, and the jury was as competent to pass upon them as the witness.

The prosecution, in rebuttal, put in evidence statements made by the defendant while testifying as a witness in the case of People *v.* Long. Though charged with the same offense for which Long was tried, it is not by the same information. It does not appear that defendant objected to being sworn on that trial, and it seems to be conceded that he did not object to answering the particular questions, the answers to which were given in evidence against him. It is contended simply that the statements are not voluntary, because the defendant was duly sworn to answer questions, and was compelled to answer, or to admit that his answers might crimitate himself. Bishop on Criminal Procedure, sections 1255–1257, cites numerous authorities, and concludes that the testimony voluntarily given as a witness are admissions or confessions, competent against him in a criminal cause to which they are pertinent.

Unless he objected to answering the particular matter complained of, and was forced nevertheless to testify, it is considered voluntary. Some few cases there are which seem to sustain the appellant, but nearly all the authorities are the other way. (See also Wharton on Criminal Law, secs. 664, 669, 1120.)

We cannot see that our code, which allows the defendant to testify or not as he may choose, and to limit his testimony to such matters as he pleases, can make any difference.

The prosecution called a witness, Hopper, to impeach and contradict defendant's witness, C. D. Boyden, whose brother was accused jointly with defendant. Boyden had said that he did not attempt to get money from Hopper for Long to get away with, in order to save his brother. Hopper testified that Boyden tried to get money for Long to get away with, but did not say that it was to save his brother. The district attorney was then allowed, defendant objecting, to impeach him by asking if he had not testified differently on the Long trial, and proceeded to read for that purpose what purported to be his evidence given at the Long trial.

This was error. A witness, whichever party calls him, cannot be impeached unless he has given testimony against the impeaching party. This witness had not testified against the prosecution. He simply failed to testify to a fact which the district attorney thought he could prove by him. The defense had not proven or attempted to prove any statements made by Boyden to Hopper. Boyden's testimony on the subject was brought out on cross-examination.

The impeaching statements were evidently desired as evidence. If such testimony were admissible, it would be easy to manufacture evidence of that kind. If a witness merely fails to testify as expected, that does not authorize the party calling him to prove that the witness had elsewhere made the desired statements. It is only when he has given damaging testimony that he can be impeached. (*People* v. *Jacobs*, 49 Cal. 384.)

Many other points are made by appellant, some of which are at least debatable. They are mostly in regard to attempts at impeachment or comparatively unimportant matters, decision of which would not be of importance on a retrial of the cause.

We think the judgment and order should be reversed and a retrial had.

FOOTE, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed and a new trial ordered.

DE HAVEN, J., concurring. — I concur in the judgment, and in the foregoing opinion of Commissioner Temple, except that part which holds that the court erred in overruling defendant's objection to certain evidence given by the witness Morin. The defendant was permitted to introduce in evidence, without objection, the confession of Long, to the effect that he, Long, was the person who committed the murder for which defendant was being tried, and that he obtained from Morin the pistol with which the killing was done. This admission or confession of Long was not competent evidence in favor of defendant. It was only hearsay. (*Smith* v. *State*, 9 Ala. 994; *Sharp* v. *State*, 6 Tex. App. 650; *Rhea* v. *State*, 10 Yerg. 258; *Daniel* v. *State*, 65 Ga. 199; *Kelly* v. *State*, 82 Ga. 444.) But the confession being in evidence, and the defendant insisting upon its truth, there was no error of which defendant· can complain in admitting the testimony of Morin, to the effect that he did not loan or give Long a pistol, as it tended in some slight degree to disprove the truth of the alleged confession.