[Crim. No. 993.   In Bank.—January 7, 1904.]

# THE PEOPLE, Respondent, v. FRANK CREEKS, Appellant.

CRIMINAL LAW—MURDER—CIRCUMSTANTIAL EVIDENCE—ERROR AS TO PREVIOUS DECLARATION OF WITNESS—PRIOR TESTIMONY.—Where upon a trial for murder the testimony implicating the defendant was wholly circumstantial, and tracks leading to the place of killing corresponded with shoes found in defendant's room, and his mother, when called as a witness for the prosecution, said she could not tell positively what shoes her son had worn on the day of the killing, and that her testimony to the contrary at the preliminary examination was a mistake, it was prejudicial error to compel her to testify that at the coroner's inquest she testified that he wore those shoes during the whole day of the homicide.

ID.—SURPRISE—IMPEACHMENT OF ADVERSE WITNESS—MERE FAILURE OF EVIDENCE.—It is only where a witness who has been called by a party has given damaging testimony against him, by which he has been surprised, that he is permitted to show that the witness had made contradictory statements, by way of impeachment; but where a witness called by a party has simply failed to testify to all that was expected or desired, but has not given testimony against him, it is not permissible for the party calling him to prove that such witness previously made statements which if sworn to at the trial would tend to make out a case.

---

[1] 84 Am. St. Rep. 118.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a motion for a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

J. S. Clack, and D. M. Edwards, for Appellant.

U. S. Webb, Attorney-General, and E. B. Power, Deputy Attorney-General, for Respondent.

THE COURT.—The defendant was convicted of the crime of murder in the first degree, for the killing of one James N. Cornell, and adjudged to suffer death. He appeals from the judgment and from an order denying his motion for a new trial.

The deceased was found dead on his own land, under circumstances showing that he had been shot from behind with a shot-gun, and that whatever valuables he had on his person had been taken by the murderer. The evidence relied upon to connect the defendant with the killing was wholly circumstantial.

There was evidence tending to explain away many of the circumstances, and to create a doubt of the guilt of the defendant, but there were circumstances tending strongly to show guilt, and it cannot be held that the evidence was insufficient to sustain the verdict. Most important evidence, however, against the defendant was that relative to shoe-tracks leading to and from the place of the killing, which were apparently made by shoes similar to a pair found in defendant's room. It was all-important for the prosecution to show, if it could, that defendant wore those particular shoes on the afternoon of the killing. There is no direct evidence in the record showing that he did so wear them, except that afforded by the prior statements of defendant's mother that he did have on those shoes at the time he left her home, shortly before the killing. The mother was called as a witness by the prosecution, and having, in response to the questions of the district attorney, testified generally as to the movements of the defendant on the day of the homicide, said, ''I could not tell you what shoes he had on when he went hunting. I cannot

swear positively what shoes he had on." In so testifying, she'
apparently did not come up to the expectations of the district
attorney, who, on redirect examination, asked her if she did
not, at the preliminary examination, testify that he had those
shoes on his feet when he left home that afternoon. Without
objection, she answered that she did say so at that time, and
also said, "but it was a mistake; for I did n't notice them on
his feet after dinner." She was subsequently recalled by the
prosecution, and compelled over objection to testify that at
the coroner's inquest she testified that he wore those shoes.
during the whole of the day of the homicide. She was fur--
ther asked if her memory was not much fresher on that point
at that time than on the trial, and answered that it was, but
that she was sick at the time. The prosecution was further
allowed to show by another witness who was at the coroner's
inquest that the shoes concerning which the mother then testi-
fied were the shoes which corresponded with the tracks near
the place of the homicide.

This testimony was the only direct evidence in the case
tending to show that the defendant at the time of the homi-
cide wore shoes that could have made those tracks. It is un-
necessary to point out the prejudicial effect of the evidence
as to these declarations, especially when we stop to consider
that they came from the lips of one who would naturally seek
to conceal everything that might be injurious to defendant's
cause.

The evidence thus elicited over the objection was incompe-
tent for any purpose. It was clearly not offered for the pur-
pose of refreshing the memory of the witness, as was the case
with an unimportant question in *People* v. *Durrant,* 116 Cal.
179, 213. Here the memory of the witness had been fully
refreshed by the question as to her testimony in regard to the
same matter given at the preliminary examination, when she
had acknowledged the testimony and attempted to excuse it
by stating that she was then mistaken. Her memory had been
further refreshed on the trial by being allowed silently to read
the transcript of her testimony given at the coroner's inquest,
before being questioned as to the same. The testimony was
sought to be elicited solely for the purpose of getting before
the jury statements made by the mother on a prior occasion,

tending to make out the case of the people. Where a witness called by a party has simply failed to testify to all that party expected or desired, but has not given testimony *against* him, it is not permissible for the party calling him to prove that such witness had previously made statements which, if sworn to at the trial, would tend to make out his case. As was said by Mr. Justice McKinstry, in *People* v. *Jacobs,* 49 Cal. 384, "To admit the proof of such statements would enable the party to get the naked declaration of the witness before the jury as independent evidence." That such testimony is not authorized by the provisions of sections 2049 and 2052 of the Code of Civil Procedure was squarely held in *People* v. *De Witt,* 68 Cal. 584, 588. The decisions of this court uniformly hold such testimony objectionable. (See *People* v. *Jacobs,* 49 Cal. 384; *People* v. *De Witt,* 68 Cal. 584, 588; *People* v. *Wallace,* 89 Cal. 158, 164; *People* v. *Mitchell,* 94 Cal. 550, 566; *In re Kennedy,* 104 Cal. 429, 431; *People* v. *Conkling,* 111 Cal. 624; *People* v. *Crespi,* 115 Cal. 55.)

Upon this subject, this court has never gone further than to hold that where a witness called by a party has given damaging testimony against him—as, for instance, if the mother had here affirmatively testified that defendant did *not* wear the shoes when he left her home—the party calling him may show that the witness previously made statements inconsistent with his present testimony, and this ruling is apparently upon the theory that the party was surprised by the adverse testimony given by his own witness. Here, as was said in *People* v. *Mitchell,* 94 Cal. 550, 566, "The impeaching statements were evidently desired as evidence. If such testimony were admissible, it would be easy to manufacture evidence of that kind. If a witness merely fails to testify as expected, that does not authorize the party calling him to prove that the witness had elsewhere made the desired statements." (See, also, *People* v. *Conkling,* 111 Cal. 624.)

The prejudicial effect of this testimony was not obviated by the fact that the witness had without objection acknowledged the giving of such testimony before the committing magistrate. She had attempted to explain such discrepancy by stating that "it was a mistake, for she did n't notice them on his feet after dinner." It was not likely that she would

make the same "mistake" in such a matter on two occasions, and the fact that she had also at the inquest, immediately after the homicide, made this most damaging declaration against her son, must have operated with telling effect upon the jury. Because of the erroneous admission of this evidence, the judgment must be reversed. We are not disposed to regard seriously technical errors which could not have substantially affected the rights of a defendant, but where it is clear that an error must have injuriously affected his cause the judgment cannot be allowed to stand.

An examination of the record in this case indicates that there may be a serious question as to the correctness of some of the rulings of the trial court in excluding evidence offered by the defendant relative to the shoe-tracks. Upon this most important matter it is needless to suggest that the defendant is entitled to have admitted all legal evidence offered by him tending to contradict that offered by the prosecution.

The transcript in this case contains 822 pages and 2460 folios, many times more than the necessities of the case require. Something over one hundred rulings of the court are assigned as error, but most of these assignments are so trivial as not to be worthy of notice by any court. In the majority of cases designated as error appellant's counsel do not deign to specify in what particular the error consists, but simply state that the court erred in this, that it did so, etc.

The practice indulged in herein has unnecessarily increased the labors of this court, which is already overwhelmed with business. Because of the importance of the case, we have, however, thoroughly examined the transcript, and it is entirely due to such examination that the error necessitating a reversal has been brought to light, notwithstanding the obscurity caused by the unnecessarily voluminous record, and the assignment of so many trivial errors without cause.

The judgment and order are reversed and the cause remanded for a new trial.

VAN DYKE, J., dissenting.—I dissent. The evidence in this case shows that a cold-blooded and most atrocious murder was committed, and that robbery was the motive; and all the circumstances point to the defendant as the guilty party.

The error referred to in the opinion of the court, and on which the case is reversed, in my opinion, did not affect the substantial rights of the defendant, and it is the law: "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties" (Pen. Code, sec. 1258); and, therefore, I am of the opinion that the judgment of the court below should be affirmed.