El Pueblo de Puerto Rico, demandante y apelado *v.* Sergio Plata, acusado y apelante.

No. 3059.—*Visto:* Febrero 1, 1927. *Resuelto:* Abril 8, 1927.

1. Derecho Penal—Juicio—Necesidad, Requisitos y Suficiencia de las Instrucciones—Declaraciones Prestadas por Cómplices—Suficiencia de la Instrucción.—Independientemente de la cuestión de corroboración, cuando se admite prueba para contradecir la declaración de un cómplice, aún cuando aquélla sea admisible, si no se instruye al jurado al efecto de que tal prueba no debe considerarse como evidencia primaria para probar la participación del acusado en el delito imputádole, las instrucciones dadas son defectuosas.

2. Derecho Penal—Juicio—Curso del, y Forma en que se Conduce el Juicio en General—Abogado Defensor para Personas Acusadas de Delito Grave—Deber de Nombrarlo—En General.—Cuando un acusado solicita el nombramiento de un abogado y los indicios son todos de que es insolvente, el no nombrársele, en caso importante de delito grave, lleva consigo la revocación.

3. Derecho Penal—Juicio—Curso del, y Forma en que se Conduce el Juicio en General—Abogado Defensor para Personas Acusadas de Delito Grave—Deber de Nombrarlo—Habiéndose Solicitado y Concedido el Nombramiento por Otro Juez del Tribunal.—Cuando durante el curso de un juicio en el cual el acusado ha solicitado el nombramiento de abogado aparece que tal solicitud fué hecha y concedida por otro juez del tribunal con anterioridad a dicho juicio, el juez que conoce de dicha causa debe decretar la nulidad de éste y señalarlo *de novo.*

4. Testigos—Credibilidad, Impugnación, Contradicción y Corroboración—Manifestaciones Inconsistentes de Testigos—Testigos que Están Sujetos a Impugnación—Testigos Propios.—Antes de que pueda ofrecerse prueba contradictoria para contradecir un testigo de cargo que no declare en la forma que de él esperaba el fiscal, el testigo debe haber declarado previa y positivamente algo perjudicial al Pueblo o favorable a la teoría de la defensa.

5. Testigos—Credibilidad, Impugnación, Contradicción y Corroboración—Manifestaciones Inconsistentes de Testigos—Testigos Sujetos a Impugnación—Propios Testigos.—La prueba en contrario que una parte puede aducir para impugnar sus propios testigos debe ser prueba para contradecir a éstos y no prueba en sustitución de otra que, de otro modo, no podría presentarse a la corte o al jurado.

6. Apelación y Error—Revisión—Errores Perjudiciales—Admisión de Prueba Objetada — Prueba para Contradecir o Impugnar Testigos — Prueba de Manifestaciones Inconsistentes—Admisión sin Dar Oportunidad para Explicar la Inconsistencia.—Cuando un testigo resulta hóstil y se ofrece y admite prueba para contradecirlo sin antes darle oportunidad para que se explique, la prueba así ofrecida es inadmisible y su admisión constituye error perjudicial.

7. Derecho Penal—Juicio—Custodia, Proceder y Deliberaciones del Jurado—Lectura de las Declaraciones Tomadas por el Taquígrafo.—Como la cuestión de si parte de la prueba tomada por el taquígrafo puede leérsele al jurado queda generalmente a la sana discreción de la corte inferior, ordinariamente ésta no debe hacer indicación alguna al jurado respecto a refrescarle su memoria con la lectura de parte de dicha prueba de ser necesario, sino que debe permitirse al jurado ejercer su propia voluntad.

SENTENCIA de *Roberto H. Todd, Jr., J.* (Ponce), condenando al acusado por delito de escalamiento en primer grado. *Revocada,* ordenándose la celebración de un nuevo juicio.

El apelante compareció por escrito en su propia representación; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Jaime Alvarez del Manzano y Sergio Plata fueron acusados de un delito de escalamiento en primer grado.

El acusado Sergio Plata solicitó y obtuvo un juicio por separado; y además, según se verá más tarde, pidió antes del juicio que se le nombrara un abogado defensor. Se verá además que al comenzar el juicio hizo igual solicitud al juez sentenciador, súplica que la corte denegó. Por tanto, se procedió a la celebración del juicio, y el acusado tuvo que representarse a sí mismo. Celebrado el juicio, el jurado rindió un veredicto de culpabilidad por el delito imputado. El acusado fué sentenciado a diez años de presidio, y apeló de tal sentencia.

Jaime Alvarez del Manzano, que había sido acusado conjuntamente con el apelante, fue un testigo de El Pueblo. A este testigo se le preguntó al principio de su interrogatorio si no le había manifestado a un detective que él y el acusado habían cometido el robo. El acusado en aquel entonces no formuló objeción a esta declaración. Resulta que estas alegadas manifestaciones del supuesto cómplice no fueron hechas en presencia del acusado, ni se demostró ni se ofreció probar una previa combinación.

El fiscal de la corte de distrito procedió a preguntarle al supuesto cómplice acerca de otros hechos y asuntos en que el acusado aparentemente no había tenido intervención, y dijo a la corte lo siguiente: "Deseo manifestar a la corte que he hecho estas preguntas porque el fiscal ha sido sorprendido por la declaración de este testigo." Continuó el interrogatorio en el mismo sentido, pero el acusado no se opuso.

Entonces Ramón Martínez Chapel fué llamado a declarar. Se le preguntó sobre ciertas manifestaciones que se suponían haber sido hechas por Alvarez, el testigo anterior y supuesto cómplice. Mientras el testigo manifestaba que el supuesto cómplice había hecho su declaración voluntariamente, el acusado se dirigió a la corte en los siguiente términos: "Señor Juez: ¿es admisible que declare un testigo por información?" La corte preguntó: "¿Estaba presente el acusado también?" y el testigo declaró que no. El fiscal entonces dijo: "Es completamente admisible cuando un testigo sorprende al fiscal en su declaración, y ya le hice yo las advertencias a Alvarez." La corte admitió la declaración. Entonces se presentaron otros testigos bajo la misma teoría, es decir, con el propósito de declarar lo que Alvarez, el supuesto cómplice, les había dicho.

Finalmente, según aparece en la página 27 de la transcripción, el acusado hizo una objeción más enfática. Llamó la atención al hecho de que se estaba admitiendo mucha prueba de referencia, diciendo que probablemente por ese motivo era que no se le había concedido un abogado. La corte tenía la impresión, y así lo manifestó, de que el acusado debió haber solicitado un abogado antes del juicio; y que con respecto a las declaraciones de los testigos, el fiscal ya había explicado que estaban tratando de contradecir la veracidad de las manifestaciones hechas por Alvarez, puesto que el fiscal había sido sorprendido por su declaración, manifestando· la corte que esto se hacía en virtud de la jurisprudencia del Tribunal Supremo de Puerto Rico sentada en el caso de *El Pueblo* v. *Ríos*, 34 D.P.R. 546; que cuando la declaración de un testigo de cargo sorprendía al fiscal, éste podía atacar su veracidad con otra evidencia, y que fué para ese objeto que se admitieron estas declaraciones, a fin de que los señores del jurado pudieran determinar el crédito que les merecían las manifestaciones hechas por el testigo Alvarez, así como los demás testigos presentados durante el juicio.

Antes de la terminación del juicio, el·acusado volvió a llamarle la atención a la corte hacia el hecho de que estaba sin abogado, y que con anterioridad a la celebración del juicio había solicitado por dos veces que se le nombrara uno. El juez dijo que no se le había llamado la atención a tales solicitudes, y que en aquel momento, la corte era de opinión que no tenía facultades para nombrar un abogado de oficio en un caso de escalamiento.

El jurado rindió su veredicto con fecha 4 de octubre de 1926. El día 7 del mismo mes y año, se citó al acusado para que compareciera a la lectura de la sentencia, y·en dicho día la corte le preguntó al acusado si tenía alguna razón legal que aducir por la cual no debía dictarse sentencia en su contra. El acusado presentó un escrito a la corte, en el cual dijo lo que sigue:

"Que se abstuvo de recusar parte o todos los señores del jurado por haberle negado la corte una solicitud que hiciera para que le nombrara un abogado defensor, por ser insolvente; que se opuso a la sentencia por no estar de acuerdo con el veredicto dado por el jurado, por creer que dicho veredicto no fué nacido de sus propias conciencias, basándose para ello en que la corte, cuando se declaró en receso para todos ir a almorzar, hora en que ya estaba sometida toda la prueba del caso, dejó en completa libertad a los señores del jurado, dando por resultado que dichos señores salieran del edificio de la corte a sus respectivos hogares, en unión de policías, detectives y testigos de cargo y agentes de la casa mercantil Moscoso Hermanos (los dueños de la casa escalada); que la corte reanudó su sesión a las 2:30 P. M. cuando todavía faltaban algunos miembros del jurado, mientras los demás estaban en contacto con el público, detectives y testigos en su contra, para luego reunirse a continuar el juicio y más tarde dar el veredicto que dieron en el presente caso."

La corte en contestación dijo que era una facultad discrecional de la corte poner a los señores del jurado bajo la custodia del márshal o bajo su palabra de honor, y que importaba poco el que uno de los miembros del jurado hubiera llegado tarde. Entonces el acusado pidió que la moción que

le había presentado al juez Acosta Quintero, que dicho juez había declarado con lugar, fuera unida a los autos del caso.

El juez entonces replicó:

"En cuanto al otro particular de esta moción, de acuerdo con el Código de Enjuiciamiento Criminal, (el nombrar un abogado de oficio puede hacerse) únicamente en los casos de asesinato en primer grado, en los demás casos es a discreción de la corte nombrar o no nombrar a un acusado, abogado; la corte no puede obligar a los abogados del distrito a prestar sus servicios a los acusados en los demás casos. No habiendo razón alguna para impedir que la corte dicte sentencia en el día de hoy, la corte dicta sentencia contra Sergio Plata por un delito de escalamiento en primer grado, y para hacerlo, y de acuerdo con la jurisdicción en el caso del *Pueblo* vs. *Delgado*, 35 D. P. R. 178, en que el Tribunal Supremo ha resuelto que el juez puede recibir evidencia para agravar o mitigar la sentencia que va a imponer, la corte ha recibido y ha admitido la prueba presentada por el fiscal, consistente en una certificación del alcaide de la cárcel del distrito de San Juan, en que consta el récord penal del acusado."

Sigue a esto una extensa lista de convicciones contra el acusado por hurto menor y escalamiento en segundo grado. En una de las sentencias faltaba aún un año por cumplir, y la corte comentó sobre el hecho de que las sentencias cumplidas y las que aún tenía que cumplir el acusado ascendían a doce años siete meses.

La transcripción de los autos fué elevada a esta corte, y el acusado presentó un llamado alegato.

Si bien este alegato es informal, suficientemente llama la atención de esta corte a dos o tres cuestiones importantes. La primera es el haber dejado la corte de designarle un abogado, la segunda es la objeción a toda la prueba de referencia que fué admitida durante el juicio, y la tercera es la libertad concedida a los señores del jurado después de haberse presentado toda la prueba.

[1] Hemos examinado las instrucciones. En lo general son muy buenas, y si el acusado hubiese tenido abogado, no hubiéramos notado ciertas omisiones de que las mismas ado-

lecen. La corte, muy acertadamente, instruyó al jurado que no debía creer las manifestaciones de un cómplice a menos que hallara que tales manifestaciones habían sido corroboradas. Pero la corte, si embargo, no le indicó al jurado la naturaleza de tal corroboración. Lo que queremos decir con esto es que la corte debió haberle dicho al jurado que alguna de la prueba presentada no podía de ningún modo utilizarse para la corroboración. Suponiendo, por ejemplo, que todas las manifestaciones de los testigos,—y hubo muchas de ellas —que fueron admitidas con el fin de contradecir el supuesto cómplice, eran propiamente admisibles, no obstante, como fueron expresa y ostensiblemente admitidas tan sólo con el propósito de controvertir la declaración de dicho cómplice, la corte debió haber instruído cuidadosamente al jurado que éste no debía considerar ninguna parte de tales declaraciones como que corroboraba las manifestaciones de dicho cómplice.

Las instrucciones son defectuosas en el sentido de que, independientemente de la cuestión de corroboración, la corte debió haber instruído al jurado que la prueba admitida para contradecir al cómplice no debía ser considerada por el jurado como evidencia primaria para probar la participación del acusado en el delito imputádole.

[2, 3] Consideremos ahora la necesidad del nombramiento de un abogado. El artículo 141 del Código de Enjuiciamiento Criminal, según fué aprobado en el 1902, dice lo siguiente:

"Si compareciere el acusado a responder a la acusación sin abogado, deberá el tribunal hacerle presente su derecho a tener abogado defensor antes de leerse el acta de acusación y preguntarle si desea la asistencia de letrado. Si contestare afirmativamente, y no estuviere en posición de emplearlo, el tribunal deberá nombrarle abogado defensor, de oficio."

Este artículo, según fué enmendado en 1905, lee como sigue:

"Cuando se traiga al acusado ante el tribunal con el fin de ins-

truirle proceso por un cargo que envuelva pena capital o reclusión perpetua, si resultare que no tiene abogado y que la pobreza del acusado no le permite emplear defensor, el tribunal designará uno o más letrados en ejercicio para que defiendan gratuitamente al reo, concediendo a dichos letrados un período de tiempo razonable para prepararse para el juicio. En todos los demás casos, quedará a la discreción del tribunal, la designación de abogado.'' (Comp. de 1911, pag. 1016).

El artículo 2 del Acta Orgánica de Puerto Rico dispone que en todos los procesos criminales el acusado gozará del derecho de tener para su defensa la ayuda de un abogado, etc.

Esta disposición del Acta Orgánica no tiene posiblemente otro fin que el de asegurar al acusado el derecho de tener para su defensa la ayuda de un abogado. Por sus términos dicha disposición no hace imperativo que una corte designe un abogado en cada caso en que un acusado comparezca a juicio sin abogado. Sin embargo, una duda nos asalta, respecto a que si un acusado en un juicio por un delito grave dice que es insolvente, no surge el deber por parte de la corte de nombrarle un abogado. La duda es de si la disposición del Acta Orgánica no se convierte en letra muerta cuando un acusado no tiene los medios suficientes para utilizar los servicios de un abogado.

Estas consideraciones son en algo reforzadas debido a la actitud asumida por el juez al decir que no podía obligar a ningún abogado a hacerse cargo de la defensa del acusado. Resolvemos que la ley dice lo contrario, por lo menos, en un caso de delito grave. Un abogado es en primer lugar un funcionario de la corte y en un caso propio puede ser obligado a hacerse cargo de la defensa de una persona acusada de un delito.

El Juez Field dijo algo parecido en el caso de *Rowe* v. *Yuba County,* 17 Cal. 61, en que la corte agregó que para su remuneración, los abogados debían confiar en la posible habilidad futura del acusado. Después de hacer una indicación similar en el caso de *Cutts* v. *State,* 54 Fla. 21, 45 So. 491,

la corte dijo que nadie estaba en libertad de declinar tal designación, y que era de esperarse que muy pocos estarían dispuestos a hacer esto. El Juez Holt, de la Corte de Distrito de los Estados Unidos para Puerto Rico, en el tomo 1 P. R. Fed. pág. 439, se expresó en los siguientes términos:

"Los abogados así nombrados no pueden negarse a actuar. Son funcionarios de la corte. Ejercen una franquicia o privilegio con permiso de la corte, y es su deber servir a las necesidades de la justicia pública."

Otras decisiones a este mismo efecto son: *Pardee* v. *Salt Lake County,* 39 Utah 482, 118 Pac. 122, 36 L. R. A. (N. S.) 377, y nota, Ann. Cas. 1913–E 200, y nota; *Dane County* v. *Smith,* 13 Wis. 585, 80 A. D. 754; *Weatherby* v. *Pitman,* 101 S. E. 131; 66 C. J. 627. En uno de estos casos, el juez ponente dijo que en toda su experiencia (y era amplia) nunca había conocido un abogado que se negara a aceptar tal designación.

En la práctica, si la corte desea nombrar un abogado defensor, casi nunca halla dificultades. En casi todos los sitios en que hay cortes de distrito siempre hay abogados que a la simple indicación de la corte estarían dispuestos a hacerse cargo de la representación de un acusado, especialmente si el abogado no está ocupado en un juicio o preparándose para el mismo. Desde luego que hay muchos abogados que no les gusta dedicarse a la práctica criminal, pero la situación cambia inmediatamente cuando la corte les pide que así lo hagan. Ello es una cuestión de honor para el foro. Los abogados jóvenes, especialmente, con frecuencia se alegran de tener la oportunidad de defender un caso.

No sabemos a ciencia cierta cuál fué el propósito de la Legislatura al enmendar el artículo 141 del Código de Enjuiciamiento Criminal y dejar a la discreción de la corte el nombrar o no un abogado en casos en que no estuviese envuelta la pena capital o reclusión perpetua. Nos imaginamos que esto fué en parte con el fin de evitar la necesidad de nombrar

abogados hasta para los casos de las infracciones de las orde-
nanzas municipales y otros delitos menos graves.  Igual-
mente, quizás el fin de la Legislatura fué darle a la corte la
discreción de determinar si en realidad un acusado era o no
insolvente y podía contratar los servicios de un abogado.
Además, es menos embarazoso para una corte que un acusado
en un caso importante esté representado por un abogado; de
lo contrario el juez frecuentemente vendría obligado a asumir
la representación del acusado y a tratar de juzgar anticipada-
mente si una pregunta dirigida a un testigo es o no admisible.
Con respecto a ciertas declaraciones, una pregunta hecha por
el fiscal podría ser evidentemente inadmisible y el abogado
del acusado, sabiendo que la respuesta no sería perjudicial,
quizás no se opondría; y en otras muchas formas la pre-
sencia de un abogado evitaría demoras.  Además, al llegar
a las instrucciones al jurado, es de presumirse que la corte
siempre es ayudada por los abogados y no tendría la duda de
si sus instrucciones han cubierto todas las cuestiones o si se
ha incluído algo en detrimento de los derechos del acusado.

Aparece, tal como hemos indicado, que el acusado al co-
menzar el juicio solicitó del juez que presidía la corte que le
nombrara un abogado.  La corte creyó que la solicitud se
había hecho demasiado tarde.  No estamos de acuerdo con la
corte.  Cuando el acusado solicita que se le nombre abogado,
y especialmente cuando todos los indicios son de que el acu-
sado es insolvente, creemos que es un abuso de discreción no
nombrárselo en un caso importante de delito grave, supo-
niendo, como lo hacemos ahora, que el nombrar un abogado
sea enteramente discrecional.

Sin embargo, más tarde durante el curso del juicio resultó
que el acusado había solicitado una, y, posiblemente, dos
veces, que se le designara un abogado.  Aparentemente, de
los autos se desprende que el otro juez de Ponce había acce-
dido a la súplica del acusado de que se le nombrara un
abogado.  Aún bajo la teoría de que el acusado debió haber

hecho su solicitud antes del momento del juicio, no obstante, tal como se usa la frase, fué un abuso claro de discreción no nombrarle un abogado, cuando el acusado le demostró a la corte que había solicitado previamente que se hiciera tal nombramiento y que su súplica había sido concedida por el otro juez. Bajo las circunstancias expresadas, era el deber ineludible de la corte haber decretado la nulidad del juicio y haberlo señalado *de novo*. Es cierto que el acusado demostró tener algunos conocimientos sobre procedimientos legales, pero evidentemente no sabía lo suficientemente para insistir en que ya había solicitado se le nombrara un abogado. El haber dejado de nombrar un abogado es por sí solo suficiente para la revocación de este caso.

[4, 5] La admisión por parte de la corte del cúmulo de prueba de referencia a que nos hemos referido fué errónea, y sin duda alguna, perjudicial al acusado, por lo menos en la forma en que la misma fué admitida. En el caso de *El Pueblo* v. *Rojas,* 16 D.P.R. 251, dijimos:

"Aunque no se hizo ninguna objeción específica ni se formuló excepción a la declaración del Fiscal, sin embargo la misma fué permitida de acuerdo con la teoría del juez sentenciador, de que tal evidencia era admisible con arreglo al artículo 243 del Código de Enjuiciamiento Criminal, y contra esta clase de prueba el abogado había formulado objeción cuando declaraba el cabo de la policía. Es evidente que una gran parte de las declaraciones en las que se trataba de establecer la culpabilidad del acusado, fué llevada a la atención del juez no por testigos oculares ni por prueba circunstancial, sino so pretexto de tratar de contradecir un tes    de la acusación. La teoría era, según se comprobó por la ofer   inicial del fiscal, que éste era un medio de prueba de acuerdo con el artículo 243 del Código de Enjuiciamiento Criminal.

"Esta disposición es idéntica a la contenida en la ley de evidencia, artículo 156, Leyes de 1905, página 156. Cada una de ellas ha sido tomada de disposiciones análogas del Código de Enjuiciamiento Civil del Estado de California, a saber, los artículos 2049 y 2052. El tribunal más alto de aquel estado ha declarado de modo uniforme que para que pueda ser contradicha la evidencia debe ser inesperada y contraria a lo que debía esperar la parte que presenta

el testigo. (*People* v. *Jacobs*, 49 . Cal., 384; *People* v. *Mitchell*, 94 Cal., 550, 29 Pac. 1106; *People* v. *DeWitt*, 68 Cal. 584, 588, 10 Pac., 212; *People* v. *Creeks*, 141 Cal. 533, 75 Pac., 101.)''

Entre otras cosas, en el caso de *People* v. *Mitchell, supra,* se dijo claramente que la prueba, para ser contradicha, debe ser por sí misma perjudicial al gobierno. En otras palabras, que el testigo debe haber declarado positivamente algo perjudicial al Pueblo o favorable a la teoría de la defensa antes de poderse ofrecer tal prueba contradictoria.

El artículo 243 dice como sigue:

''A la parte que presente un testigo, no le es permitido impugnar su veracidad probando que es persona de mala reputación; pero podrá contradecirlo, aduciendo pruebas en contrario, y demostrar que en ocasiones anteriores, ha hecho manifestaciones que no concuerdan con su actual declaración.''

Al decir este artículo que puede contradecirse al testigo aduciendo prueba en contrario, ello no significa que la supuesta contradicción es un disfraz para introducir prueba que de lo contrario sería inadmisible. Tal prueba debe presentarse para contradecir al testigo y no en substitución de prueba que de otro modo El Pueblo no podría presentar al jurado.

[6] Además, cuando un testigo de El Pueblo resulta hóstil, se coloca en la misma situación que cualquier otro testigo adverso y debe seguirse lo prescrito en el artículo 245 del Código de Enjuiciamiento Criminal. Este dice así:

''También puede ser impugnada la veracidad de un testigo por medio de prueba que demuestre que en ocasiones anteriores ha hecho manifestaciones que no concuerdan con su actual declaración; pero antes de hacerlo, se le referirán dichas manifestaciones, con expresión de la época, lugares y personas que hubieren estado presentes al hacerlas, y se le preguntará si dichas manifestaciones fueron hechas por él, permitiéndosele que las explique, si contestare afirmativamente. Si las manifestaciones fueren escritas, se enseñarán al testigo antes de interrogarle acerca de ellas.''

En algunos respectos, se ofreció prueba tendente a con-

tradecir a Alvarez, sin haber antes dado al testigo la oportunidad para que se explicara. Sin tal oportunidad preliminar, alguna de la prueba ofrecida, al ser objetada, era inadmisible por esta razón, si no por alguna otra. Tampoco puede suponerse que la admisión de tal prueba no fuera perjudicial. Véase el caso de *El Pueblo* v. *Ramírez de Arellano*, 25 D.P.R. 263.

Los hechos del caso de *Ramírez* eran algo distintos a los del caso de *Rojas*, arriba citado, pero en el mismo se confirmó el principio sentado en este último caso.

El caso de *El Pueblo* v. *Ríos*, 34 D.P.R. 546, no sostiene la posición, del fiscal y de la corte. En dicho caso, al igual que en el de *El Pueblo* v. *Rodríguez Hernández*, 36 D.P.R. 427, los testigos habían hecho manifestaciones positivas que eran perjudiciales al caso de El Pueblo. Todos los casos examinados en el caso de *Ríos*, demuestran que el gobierno trataba de probar que no se debía dar crédito a un testigo cuya declaración podía ser perjudicial.

No tomaremos mucho tiempo en discutir si se debió o no haber permitido que el jurado se dispersara después de haberse aducido toda la prueba, y especialmente, si el caso le había sido sometido por las instrucciones de la corte. No estamos preparados para decir que la corte no tenía discreción en esto, pero estamos inclinados a creer que, bajo las circunstancias de este caso, y debido a la atmósfera creada, hubiera sido mejor práctica, sin hacer mención de un verdadero ejercicio de discreción, poner al jurado bajo la custodia y autoridad del márshal o sub-márshal. Resulta que el acusado era un criminal consumado. En tales casos, los policías y los detectives frecuentemente despliegan más celo para obtener una convicción, y, en tal afán, podrían decirle al oído a un miembro del jurado que el acusado ha sido convicto varias veces por otros delitos y que ha estado mucho en la cárcel. No importa lo empedernido que sea un criminal, debe juzgársele únicamente por el delito de que se le acusa, y no

por la comisión de otros delitos. Decimos esto además, porque aunque probablemente no fué un error grave, la corte en este caso le manifestó al acusado que él, el acusado, estaba suficientemente familiarizado con los procesos criminales, manifestación que, aunque no hubiera sido ésa la intención de la corte, pudo llevar al jurado el hecho de los antecedentes penales del acusado.

[7] En la página 4 de las instrucciones al jurado, y después de indicar que no era necesario hacer un análisis de la prueba, por estar las declaraciones frescas en las mentes de los señores jurados, la corte dijo:

". . . Si algún señor jurado no recuerda alguna de estas declaraciones o si tiene duda en cuanto a cualquier parte de la prueba, no tiene más que decirlo a la corte y ésta ordenará al taquígrafo que lea cualquier declaración que deseen oir de nuevo los señores del jurado."

Cuando se somete un caso al jurado, se supone que éste llegue a un acuerdo tan rápidamente como sea posible. Si el jurado tiene que venir a la corte porque uno o más de sus miembros tienen dudas, frecuentemente se demorará la rendición del veredicto. Pero aún más importante que éste es el hecho de que el acusado o su abogado tienen derecho a estar presentes en cada paso que se da durante el juicio. Algunas cortes creen que es un error leerle las notas taquigráficas al jurado. Véase la nota monográfica en el caso de *State of Iowa* v. *Perkins,* 21 L. R. A. (N. S.) 931. Sin embargo, según indica dicha nota, la cuestión de si parte de la prueba tomada por el taquígrafo puede leérsele al jurado queda generalmente a la sana discreción de la corte. Siendo una cuestión dentro de la sana discreción de la corte, ordinariamente no debe hacérsele indicación alguna al jurado, sino que debe permitírsele ejercer su propia voluntad. La experiencia tiende a demostrar que ordinariamente el jurado no necesita que se le refresque la memoria. *People* v. *Warren,* 130 Cal. 678; *Moore* v. *State,* 52 Tex. Crim. 364, 107 S. W. 355, en que los

jurados, habiendo solicitado primeramente que se les leyera la prueba, y, habiéndose demorado tal lectura, han rendido veredicto sin esperar que se efectuara la misma.

No hallamos que la corte cometiera error en el acto de dictar sentencia contra el acusado al considerar los antecedentes del acusado para mitigar o agravar la pena que le iba a ser impuesta.

Por el error cometido al dejar de nombrársele un abogado al acusado, y por los errores cometidos al admitir prueba enteramente de referencia y perjudicial, *la sentencia debe ser revocada y ordenarse un nuevo juicio.*