SHAW, P. J.
 

 The defendant here was charged with a violation of section 52.50 of the Los Angeles Municipal Code, and after being convicted, he■ appeals from the “verdict,” from the “final judgment of conviction,” and from the “order of the court granting summary probation.” The verdict is not appealable (Pen. Code, § 1466). There is in this ease no sentence and, therefore, no final judgment of conviction ; hence, the two appeals first mentioned must be dismissed. There is, however, an order granting probation in the record, and this is appealable by the defendant (Pen. Code, § 1466), so there is a proper appeal before us. It is our view that on an appeal from an order granting probation we may review the proceedings at the trial in like manner as on an appeal from a judgment.
 

 Section 52.50 of the Los Angeles Municipal Code which, it was charged, the defendant violated, reads as follows: “No person shall wilfully make to the Police Department of the City any false, misleading or unfounded report, for the
 
 *Supp. 842
 
 purpose of interfering with the operation of the Police Department or with the intention of. misleading any police officer.” The complaint was substantially in the language of the code.
 

 The evidence for the prosecution tended to show the following facts. The defendant came to the office of the Internal Affairs Division of the Los Angeles Police Department and there interviewed Sergeant Woods, who was then in charge of that office. The sole purpose of that division of the police department is to receive complaints and to investigate complaints against department personnel, and to transmit their findings to proper authority. The defendant stated to Sergeant Woods that he had just been convicted on a charge of violating section 502 of the Vehicle Code, for driving under the influence of intoxicating liquor, and that he had been so convicted by reason of perjured testimony of a named police officer. This officer, defendant said, falsely testified that he had not handcuffed defendant to a pole at the scene of arrest, and that defendant was staggering drunk at the time. Defendant said he had nothing to drink that day, and claimed that other officers who saw him could testify that he was not intoxicated.
 

 Defendant argues that this evidence does not show such a report as is contemplated by the municipal code section above quoted. This court had the same section under consideration in
 
 People
 
 v.
 
 Smith
 
 (1955), 131 Cal.App.2d Supp. 889 [281 P.2d 103]. There we held that the provision did not cover the case of one who, at the scene of an automobile accident, answered questions addressed to him by officers investigating the accident as to the identity of the driver of one of the cars involved in the accident. Defendant argues that he is within the rule there declared, but we do not agree. There we said: “While not entirely free from doubt, we have concluded that if it had been the intent of the city council to proscribe conduct such as that disclosed by the evidence here, it would have used language substantially different from that which it did. It seems reasonable that in such circumstances it would have provided that it should be unlawful for any person to willfully make a false statement to a police officer for the purpose stated—rather than using the word ‘report,’ which in its context, at least, seems to connote a statement written or oral made upon the initiative of one who resorts to the police department or a member thereof for the specific purpose of having some action taken with re
 
 *Supp. 843
 
 speet thereto rather than by way of response to questions by an officer—such as a missing person report or a report that a particular crime has been committed, like loss of his property as a result of robbery or burglary, or an auto accident. ’ ’
 

 Here, it is plain, from the evidence of the prosecution, that there was “a statement, written or oral, made upon the initiative of one who resorts to the police department or a member thereof for the specific purpose of having some action taken with respect thereto,” and hence there was a report within the meaning of the municipal code.
 

 Defendant testified that after he made what we designate as a report he was told by the officer to whom he made it that an investigation would not affect defendant’s conviction of the Vehicle Code, section 502, charge, and thereupon defendant told the officer that he did not want any further inquiry made. The jury may have disbelieved this part of defendant’s testimony, but if they believed it, this statement was made after the report had been completed and would not affect the quality of defendant’s previous acts as it existed when he did them. The duty of the police department to investigate perjury by its officers would not be lessened by the subsequently expressed desire of the person reporting it to have no investigation made.
 

 Defendant also claims that the report is insufficient because drunkenness is a matter of opinion. But even so, it would be a matter of interest to the police department to know that one of its officers testified that a defendant was “staggering drunk” when there was no basis for such opinion, as defendant undertook to show in his report. The report was covered by the municipal code.
 

 There is no showing that the officer who arrested defendant testified at his trial on the drunk driving charge that the defendant was “staggering drunk,” but the People had the burden of proving the falsity of the report, and they did not dispute the truth of this part of it, so we assume its truth. But there was ample evidence at the present trial to support the jury’s implied finding that such testimony, if given at the former trial, was true.
 

 The instructions given the jury here were oral and are set forth in the reporter’s transcript. The defendant complains that two instructions asked by him were not given. One of them designated by a marginal mark as A, requiring the defendant to have known at the time he made his report that it was false, misleading or unfounded, we find to be sufficient
 
 *Supp. 844
 
 ly covered by an instruction given. Instruction labeled B would have directed the jury that the question whether a person is under the influence of intoxicating liquor is one of opinion and could not be the basis of this prosecution. We have already stated our disagreement with this doctrine. There was no error in denying this instruction.
 

 There is no evidence on the question whether the officer who arrested defendant testified at his trial on the drunk driving charge that he had not handcuffed defendant to a pole. Again, since the People had the burden of proving the falsity of defendant’s report, we assume that the officer did so testify. The defendant referred in his report to a bus stop pole, but witnesses who testified that they saw him handcuffed to a pole said it was a no parking sign pole, and the defendant at his trial on the present charge also so designated it, saying he'had been mistaken in the other designation. It is not apparent what this handcuffing, if it occurred, had to do with the drunk driving charge. However, the arresting officer testified, at the trial of the present case, that he did not handcuff the defendant to any post, so the jury’s finding that defendant's report was false is supported, no matter what sort of pole is referred to.
 

 There is nothing in the defendant’s “report” or in the record before us, to indicate that if the officer had falsely testified as reported by the defendant regarding the handcuffing of defendant to a pole, such testimony would have been perjury. There is nothing to indicate that it was material to any valid issue in the drunk driving ease, as it must have been to constitute perjury (20 Cal.Jur. 1012-1013). But a report regarding it would not for that reason be excluded from the operation of the municipal code provision. A report that a police officer had testified falsely, even though not subject to the penalties of perjury, would doubtless be investigated and so interfere with the operation of the department.
 

 The prosecuting attorney made several efforts to impeach his own witnesses in this case, frequently asking the question, “Have you ever made a statement different from that!” In addition to this general question, he asked a number of more specific questions, obtaining some results of which the defendant complains.
 

 The right of a party to impeach his own witnesses, especially by proof of inconsistent statements, was discussed at some1 length in
 
 People
 
 v.
 
 Newson,
 
 (1951), 37 Cal.2d 34, at
 
 *Supp. 845
 
 pages 41 to 44 [230 P.2d 618], where many cases dealing with the subject were reviewed. After quoting section 2049, Code of Civil Procedure, the court said, at page 41: “However, the prior statements inconsistent with the witness’ present testimony can only be considered for the purpose of neutralizing and counteracting the effect of his statements upon the trial.
 

 “The purpose of the statute is to allow a party to wipe out, as nearly as possible, the evidence which has been given. Where a witness states no fact against the party calling him, there is nothing to counteract. The testimony which may be contradicted must be prejudicial and detrimental, otherwise the previous statement shown would stand out, not as offsetting contrary testimony already given, but as substantive evidence of fact.” In the course of the discussion in the Newson case, the court quoted with approval the following statement made in
 
 People
 
 v.
 
 Creeks
 
 (1904), 141 Cal. 529, 531-532 [75 P. 101] : “The testimony was sought to be elicited solely for the purpose of getting before the jury statements made by the mother on a prior occasion, tending to make out the case of the people. Where a witness called by a party has simply failed to testify to all that party expected or desired, but has not given testimony
 
 against
 
 him, it is not permissible for the party calling him to prove that such witness had previously made statements which, if sworn to at the trial, would tend to make out his case.”
 

 The prosecution in the present case called as a witness Frank W. Eapp, who was at the scene of the arrest for some time, having been called by the police to come and tow away defendant’s car, and was near the defendant for some time. He was asked by the prosecutor: “Now, from what you saw of Mr. Minter on that occasion, and what you have heard from him, and so forth, heard him say, did you form any opinion as to his condition of sobriety at that time ? ” to which he answered: “I just figured that he had been picked up for drunk driving.” Then he was asked: “Did you, yourself, form an opinion as to his condition of sobriety at that time t ’ ’ and answered, “No.” He was then asked if he had not later been interviewed by Sergeant Kunlde of the police department—if he had not told Kunlde that on this occasion, “I formed the opinion that he was drunk,” to which he replied that-he did make this statement to Kunkle. A proper objection was made to this latter inquiry and was overruled. In overruling it the court erred. Eapp has given no testimony
 
 *Supp. 846
 
 adverse to the prosecution. He had simply stated that he had formed no opinion as to defendant’s sobriety. Of course, the mere formation of an opinion by Rapp was not material to the ease and would afford no basis for an impeachment. The testimony of the witness, as far as it went to the matter of intoxication, was favorable rather than adverse to the prosecution, for he said he just figured defendant had been picked up for drunk driving. In this respect, it resembles
 
 People
 
 v.
 
 Conkling
 
 (1896), 111 Cal. 616, 623-624 [44 P. 314], where it was held that a witness who has testified in a manner somewhat helpful to the party calling him cannot be impeached by that party by showing still more favorable statements made elsewhere. As stated in this case, the statements so made are “hearsay of the plainest character”; and they are no less so because testimony regarding them is given by the very witness who made them. (See
 
 People
 
 v.
 
 Greeks, supra.)
 

 Orval Dickinson, an attendant at a gasoline station near the scene of the arrest, was called by the prosecution and asked: “Now, at the time, there, did you form any opinion as to the condition of sobriety of Mr. Minter at that time?” to which he answered: “Not particularly; I thought maybe he had been drinking.” He was then asked if he told Sergeant Kunkle, “That you formed the opinion that the man was very drunk from his action? His answer was, “No.” Later the prosecutor called Sergeant Kunkle, who testified, after objection overruled, that Dickinson told Kunkle, “that he formed the opinion that the man was drunk, from his actions.” This testimony is subject to the same rule just stated in regard to the testimony of Rapp. Not only was the testimony of Dickinson not adverse to the prosecution, but it was to some extent favorable. The overruling of the objection was error.
 

 Thus we have two eases where the extrajudicial statements of witnesses that the defendant was drunk at the time of his arrest were erroneously permitted to be presented to the jury. The rule to be followed in such a case was thus stated in
 
 People
 
 v.
 
 Newson, supra,
 
 (1951), 37 Cal.2d 34, 44-45: “To affirm the judgment of the trial court, despite the admission of the impeaching statements, this court must determine that, considering the entire record, the error did not prejudice the defendant’s rights. (Const., art. VI, § 4½)
 

 “ If it cannot be said that, in the absence of the error complained of, a different verdict would have been improbable, the erroneous ruling constitutes a miscarriage of justice within the meaning of the constitutional provision.”
 

 
 *Supp. 847
 
 Applying this rule to the present case, we cannot say there was no probability of a different verdict had these errors not occurred. The question whether defendant was drunk when arrested was an important issue in the case. If he was not drunk, he was certainly justified in making complaint about the arresting officer’s conduct. The evidence relating to defendant’s condition in this respect was conflicting, and the jury might have taken a different view of it without these errors. Apparently .the arrest occurred about 4 p. m. or perhaps a few minutes later. The prosecution produced three policemen who were at the scene of the arrest, and testified that defendant was drunk; one civilian also at the scene of the arrest, who testified that defendant was intoxicated ; and one employee at the jail who testified that defendant was drunk when he arrived there. The defendant said he had nothing to drink that day, and produced one witness who saw him an hour or so before his arrest, and said that he was then normal and seemed to have
 
 no
 
 liquor, and another who saw him possibly a half hour before and said he was then normal. He also had two witnesses who telephoned to him an hour or maybe less before his arrest, and said he sounded normal. The People produced a witness who thought defendant was drunk at the time, but changed his mind on talking to defendant afterward because he still looked and acted as he did that day, and one witness who was present at the arrest but formed no opinion whether defendant was sober or not.
 

 The order granting probation is reversed, and the cause is remanded for a new trial. The purported appeals from the judgment and the verdict are dismissed.
 

 Patrosso, J., and Swain, J., concurred.